[Crim. No. 8381. Third Dist. July 29, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
DUANE VAN PERRY, Defendant and Appellant.

## COUNSEL

Marsha B. Shanle, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Robert F. Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**EVANS, J.**—Defendant Duane Van Perry appeals from a judgment of conviction entered on a jury verdict finding him guilty of first degree robbery (Pen. Code, § 211) with a prior felony conviction. His sole contention challenges the propriety of the trial court's admission of opinion testimony that defendant was the man depicted on a motion picture film of the robbery.

On the day of the robbery, James Ting was working alone as a teller-cashier at the Sacramento Service and Development Corporation. Shortly after noon, a man approached the cashier's window, held a gun on Ting, told him not to move or make a noise, and climbed inside the booth through the window. Once inside, he forced Ting to lie on the floor and opened a door, admitting another person to the booth. Ting was then tied with a woman's stocking and the two men rifled the cash drawer taking $371 in cash and $3,445 in food stamps. The robbers fled; Ting untied himself and attempted to trigger the alarm system. He noticed that the booth's concealed surveillance camera had been activated using all of the film; it had apparently been activated when the money was removed from the box. The film was later delivered to the police and processed.

Although facing the wall while he was bound and not able to observe the second man directly, Ting did "glance" at him out of the corner of his eye. He described the robber to the police as a black male of medium build, about 5 feet 7 inches in height, weighing 150 pounds, approximately 25 to 30 years of age, and wearing a cap.[1]

On the day following the robbery, Officer Donald Steed of the Sacramento Police Department received the surveillance film and secured the assistance of Officer George Brown in identifying the individuals depicted. Brown identified the second robber (the one without the gun and wearing a hat) as defendant Perry. His identification was based upon past recollection of defendant's appearance from numerous street contacts during the preceding five-year period and the fact that defendant had an abnormal-appearing eye. Ting was shown the film; he believed it accurately depicted the robbery, but was unable to identify defendant as the man in the film. Ting was also unable to

---

[1]Defendant is a black male, 5 feet 6 inches tall; he weighs 150 pounds and was 28 years old at the time of the robbery.

identify defendant as the second robber from a photo lineup or an in-person lineup.

J. Robert Griffin, M.D., a Sacramento opthalmologist, was shown the surveillance film of the robbery by Officer Steed. Griffin testified that after viewing the film, he formed the opinion that one of the individuals in the film had an abnormality in the right eye. The abnormality was explained to be exotropia, a form of "strabismus" in which the eye deviates outward. The condition was most pronounced in the person depicted when he looked upward. The doctor viewed the film a second time, came to the same conclusion and asked that blow-up still photographs be taken of various frames of the movie. Several of the stills demonstrated the described condition in the subject.

After viewing the film the second time, Griffin examined Perry pursuant to a court order and concluded that his right eye showed a moderate exotropia which increased as he looked upward. The doctor also examined several photographs of the defendant and stated that they demonstrated the same abnormality. The doctor testified that of the people with exotropia, approximately 15 percent have a pronounced problem when they look upward (as did the defendant and subject in the robbery film).

During trial, the film was shown to several witnesses acquainted with defendant, and they were asked whether the man in the film was the defendant. Ting was unable to identify the defendant as the man in the film; John Selby, the manager of the apartment house where defendant resided, testified that the subject in the film appeared to be the defendant because of his facial structure and mustache; a former employer of the defendant testified that blow-up photos of the film resembled the defendant, but the subject in the movie was not defendant; Allen Anderson, defendant's parole officer, identified the person depicted as the defendant on the basis of general facial features, his height and the abnormal right eye. Defendant's brother William testified that the person in the film was not defendant; he based his conclusion upon physical differences between the subject and the defendant, including type of mustache, a too square chin, a pointed nose, and a difference in weight. William acknowledged that the subject in the film had some facial hair in the cleft area between his chin and lower lip, and that defendant also wore hair there. Officer Brown identified one of the robbers depicted in the film as the defendant based partly on the defendant's abnormal eye. Officer Steed testified that by comparing a still photograph of defendant

with the film, he formed the conclusion that defendant was the subject depicted. The defendant objected to the testimony of Officer Brown and Parole Officer Anderson. The objections were overruled. The defense did not call any witnesses. However, through cross-examination and argument, Perry sought to create a reasonable doubt that he was the person depicted in the film.

I

The question raised on appeal is one of first impression in California.

■ The identification testimony of the witness viewing the film of the robbery may be considered lay opinion on the question of the identity of the person depicted therein inasmuch as the witness was not qualified as an expert in film reading or interpretation. Evidence Code section 800 prescribes the limits within which lay opinion testimony may be used. "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:

"(a) Rationally based on the perception of the witness; and

"(b) Helpful to a clear understanding of his testimony."

Defendant concedes that the identity of a person is a proper subject of nonexpert opinion (*People* v. *Gonzales* (1968) 68 Cal.2d 467, 472 [67 Cal.Rptr. 551, 439 P.2d 655]; *In re Corey* (1964) 230 Cal.App.2d 813, 826 [41 Cal.Rptr. 379]; Witkin, Cal. Evidence (2d ed. 1966) The Opinion Rule, § 392, pp. 352-353), but argues that only a percipient witness to the crime may give testimony on the question of identity. We do not perceive the rule so restrictively.

In *People* v. *Gonzales, supra,* 68 Cal.2d 467, a police officer was permitted to identify defendant as a person seen leaving a specified area prior to participation in a crime. The officer was neither a victim nor percipient witness to that crime. The court, at page 472, stated, "There is likewise no merit to defendant's claim that the court erred in overruling an objection, based on the opinion rule, to testimony of Officer Hanks regarding the identity of the man who left the bar. (See former § 1870, subd. 9, of Code Civ. Proc.; *Holland* v. *Zollner,* 102 Cal. 633, 637-639 [36 P. 930, 37 P. 231]; Witkin, Cal. Evidence (1966) pp. 352-353.) Hanks

testified that in his opinion the man he saw leave the bar was defendant, that clothing and specified characteristics of the man appeared to be the same as those of defendant, but that Hanks did not see the facial characteristics of the man and could not positively identify defendant as the man. Lack of positiveness as to the man's identity went to the weight and not to the competency of the evidence. (*People* v. *Avery*, 35 Cal.2d 487, 492 [218 P.2d 527]; *People* v. *Abner*, 209 Cal.App.2d 484, 491 [25 Cal.Rptr. 882]; *People* v. *Harris*, 87 Cal.App.2d 818, 821-823 [198 P.2d 60].)" (Fn. omitted.)

The statutory and decisional law permitting lay opinion testimony on the question of identity is limited to opinion founded on personal perception. (*Donahue* v. *United Artists Corp.* (1969) 2 Cal.App.3d 794, 803 [83 Cal.Rptr. 131]; *People* v. *Ogg* (1968) 258 Cal.App.2d 841, 846 [66 Cal.Rptr. 289]; Evid. Code, § 800, subd. (a).) Defendant does not challenge the identity opinion on a lack of personal perception by the witnesses. Rather, he narrowly confines his objections to their lack of perception of the crime.

The witnesses each predicated their identification opinion upon their prior contacts with defendant, their awareness of his physical characteristics on the day of the robbery, and their perception of the film taken of the events. Evidence was introduced that defendant, prior to trial, altered his appearance by shaving his mustache. The witnesses were able to apply their knowledge of his prior appearance to the subject in the film. Such perception and knowledge was not available directly to the jury. The opinions of the witnesses were sufficiently based upon personal knowledge to permit their introduction; the question of the degree of knowledge goes to the weight rather than to the admissibility of the opinion. (*Donahue* v. *United Artists Corp., supra,* 2 Cal.App.3d 794.)

█ Defendant further asserts that lay opinion testimony identifying him as the subject depicted in the robbery film improperly invades the province of the trier of fact. We disagree. We analogize the circumstances presented to those of identification of handwriting by lay opinion evidence in conjunction with comparisons made by the trier of fact.

Evidence Code section 1416 provides:

"A witness who is not otherwise qualified to testify as an expert may state his opinion whether a writing is in the handwriting of a supposed

writer if the court finds that he has personal knowledge of the handwriting of the supposed writer. Such personal knowledge may be acquired from:

"(a) Having seen the supposed writer write;

"(b) Having seen a writing purporting to be in the handwriting of the supposed writer and upon which the supposed writer has acted or been charged;

"(c) Having received letters in the due course of mail purporting to be from the supposed writer in response to letters duly addressed and mailed by him to the supposed writer; or

"(d) Any other means of obtaining personal knowledge of the handwriting of the supposed writer."

Section 1417 provides as follows:

"The genuineness of handwriting, or the lack thereof, may be proved by a comparison made by the trier of fact with handwriting (a) which the court finds was admitted or treated as genuine by the party against whom the evidence is offered or (b) otherwise proved to be genuine to the satisfaction of the court."

The Legislature has thus provided for identification of handwriting by witnesses having personal knowledge as well as by permitting the trier of fact to draw its conclusion from personal comparisons without outside assistance. The provisions of the Evidence Code providing for separate methods of identification are not mutually exclusive, nor does the procedure established by the former section invade the province of the trier of fact. Lay opinion testimony is submitted to the trier of fact only as an aid in arriving at the ultimate decision.

Nonexpert testimony on identity of handwriting has been admitted in criminal proceedings as an aid in identification of the defendant as the miscreant. (*People* v. *Porter* (1950) 99 Cal.App.2d 506, 509 [222 P.2d 151].) The same rationale which permits such evidence based upon personal knowledge applies to evidence of the identity of a pictorially depicted subject when such evidence is based upon personal knowledge of the person's physical characteristics at the time of the film depiction.

The testimony does not invade the province of the trier of fact, but rather is submitted as an aid in the determination of the ultimate question of the identity of the culprit and the defendant's guilt or innocence. The testimony was.properly admitted.

The judgment is affirmed.

Puglia, P. J., and Paras, J., concurred.