[Crim. No. 4727. Fifth Dist. Feb. 24, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD MIXON, Defendant and Appellant.

124

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Tom Lundy, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KLEIN (A. E.), J.*—Appellant seeks reversal of the judgment entered upon his conviction for robbery (Pen. Code, § 211) and use of a firearm in the commission of the offense (Pen. Code, § 12022.5). Appellant raises the following issues: the trial court erred in permitting police officers to identify appellant as one of the persons depicted in a surveillance photograph of the robbery; motions to dismiss (Pen. Code, §§ 995, 1118.1) were improperly denied; defense counsel's failure to object to the officers' identification testimony on Evidence Code section 352 grounds deprived appellant of effective assistance of counsel; and the court improperly sentenced appellant to the upper base term.

FACTS

On October 26, 1978, Jeffrey Bottorff was working at a self-service gas station located at West and McKinley Avenues in Fresno. At approximately 2 a.m., while Bottorff was inside the cashier's booth, two males approached the booth on foot. One of the men (subject one)

---

*Assigned by the Chairperson of the Judicial Council.

asked for cigarette change. When Bottorff turned to the cash register, the men entered the booth and subject one, standing to Bottorff's left, announced a robbery. Subject two, standing behind Bottorff, showed the latter a gun. Both subjects wore knit ski caps.

As Bottorff removed money from the cash register, he activated a surveillance camera which photographed the robbers. The camera was "tripped" by removing cash from a certain part of the register drawer. He gave the man one $10 bill, three $5 bills, and about twenty-five $1 bills. The cash included the "trip" currency. Subject one grabbed the money and asked where the "big bills" were. Bottorff pointed to the safe, and said he did not have a key. Subject one struck Bottorff in the face and shouted "Shoot him, shoot him, shoot him." The robbers then fled on foot.

Because subject one "did all the talking" and Bottorff had conversed with him face-to-face, Bottorff positively identified him from police mug shots. However, because subject two always stood behind Bottorff or behind subject one, Bottorff could only testify as to the height, build, and clothes of subject two. He stated that appellant was "similar in height and body build" to subject two. Although he testified that subject two had long sideburns, he later stated that this conclusion came from the surveillance photos he was shown and that he had no recollection of the sideburns the night of the robbery. Bottorff could not identify appellant as subject two from mug shots or in person.

Later on the day of the robbery, Fresno Police Officers William Brown and Kirkus Burks were shown the surveillance photographs taken at the gas station. Both officers identified appellant in one of the photographs. The photograph, introduced at trial as People's exhibit 1, is a downward shot revealing the left profile of the subject. Because, however, the subject is wearing a ski cap pulled below the earlobes, the photograph depicts the subject's face from only the middle of the nose down. The surveillance photograph of appellant, which was somewhat dark because of the lighting conditions, depicted an individual who had no moustache and whose sideburns were bushy and extended below the area of the mouth. At the time of the trial appellant had a moustache and his sideburns had been trimmed. A booking photograph of appellant (People's exhibit 7a) was taken under good lighting conditions at the time of the arrest on the day of the robbery. Appellant's full face and full left profile were depicted in the booking photograph. Appellant had no moustache but did have long, bushy sideburns.

Brown identified the subject in the other surveillance photos as a Kevin Sams. Brown had seen Sams and appellant together on several prior occasions.

The officers drove to an area the suspects were known to frequent and observed them at a gas station putting gas in a car Brown had "seen driven before." Appellant and Sams were arrested. Although he was not certain, Burks believed a knit cap was found in the car; the cap was, however, never booked into evidence. Burks found currency in appellant's possession.

Officer Kenneth Brocks searched appellant at the police station and found $33 in currency loose in appellant's left rear pocket. The cash consisted of a $10 bill, a $5 bill, and several $1 bills. Brocks had a record of serial numbers of the currency used to trip the surveillance camera at the robbed gas station. The numbers of the currency taken from appellant did not match any of the "trip" currency. Brocks noticed nothing unusual about the money. He placed the currency in an envelope, wrote appellant's name on the envelope, and booked it into the evidence locker.

Shortly before trial, Brocks "double-checked" the serial numbers on the bills. He noticed that the words "West and McKinley"—the address of the gas station—were written in ink in a corner of one of the $1 bills. He had not seen the writing the first time he examined the bills, but to his knowledge, no one had ever taken the bills out of the evidence locker. Jeffrey Bottorff—the gas station attendant—had at times seen his supervisors write on bills, but did not know what they wrote and could not identify having seen the marked bill before.

At the police station, appellant told Officer Brocks he had been at an all-night party the night of the robbery. He stated that the party was on Elm Avenue, but could not recall exactly where. Kevin Sams was also at the party, and neither had left at any time.

In his defense, appellant called as witnesses Gregory Sams, appellant's distant cousin, Jerry Green, a friend of appellant for about two months prior to his arrest, and Mack Yancy, appellant's grandfather, all of whom testified that the person depicted in the surveillance photo did not appear to be appellant. All three stated that appellant at times wore long sideburns, but could not recall whether he had them at the time of the robbery.

## DISCUSSION

### I

Appellant's primary contention is that the trial court erred in allowing Officers Brown and Burks to identify appellant as a subject partially depicted in one of the surveillance photos. Succinctly stated, he urges that (1) the prosecution laid an inadequate foundation as to the officers' knowledge of appellant's appearance; and (2) the testimony invaded the jury's province because the officers were no more capable than the jurors to render an opinion whether appellant was the person depicted in the photo.

Evidence Code section 800 limits nonexpert opinion testimony to "such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his testimony." Admission of lay opinion testimony is within the discretion of the trial court and will not be disturbed "unless a clear abuse of discretion appears." (*People* v. *Willis* (1939) 30 Cal.App.2d 419, 423 [86 P.2d 670]; see also *People* v. *Otis* (1959) 174 Cal.App.2d 119, 127-128 [344 P.2d 342]; *United States* v. *Butcher* (9th Cir. 1977) 557 F.2d 666, 669 [abuse of discretion standard under Fed. Rules Evid., rule 701].) Identity is a proper subject of nonexpert opinion (*People* v. *Perry* (1976) 60 Cal.App.3d 608, 612 [131 Cal.Rptr. 629]), but cases have recognized certain prerequisites to the admissibility of photographic identification testimony, particularly when such testimony comes from law enforcement officers.

The first case discussing the propriety of identifying a criminal defendant in surveillance photographs was *People* v. *Perry, supra,* 60 Cal.App.3d 608. In that case, a surveillance film was taken of a robbery at a company cashier's window. As in the present case, although he could give a general description, the clerk could not positively identify one of the two robbers. (*Id.,* at pp. 610-611.) In *Perry,* one day after the robbery, an Officer Brown was shown the photograph of the defendant and was able to identify Perry as the second robber, based upon his recollection of Perry's appearance from numerous prior street contacts and upon the "abnormal" appearance of one of Perry's eyes. (*Id.,* at p. 610.)

At trial, Brown repeated his identification of Perry as one of the robbers depicted in the film. Moreover, the trial court allowed several

additional witnesses who knew Perry to view the film and render an opinion as to the second robber's identity. The witnesses included Perry's apartment house manager who testified that the subject in the film appeared to be Perry; Perry's former employer who testified that the blowup photos of the film resembled defendant but was not defendant; defendant's parole officer who testified that the photo depicted defendant; and defendant's brother who testified that the photograph was not of his brother. (*Id.*, at p. 611.) An ophthalmologist was permitted to view the film and discuss the apparent eye abnormality of the defendant. Finally, another police officer identified Perry in the film by comparing a still photograph with the film. (*Id.*, at pp. 611-612.) Perry objected only to the testimony of Officer Brown and the parole officer.

The lay opinion identifications were upheld on appeal. The court first noted that under Evidence Code section 800 such testimony need only be based on personal perception of the witness; the witness need not have witnessed the crime itself. (*Id.*, at p. 613.) The court then stated: "The witnesses each predicated their identification opinion upon their prior contacts with defendant, their awareness of his physical characteristics on the day of the robbery, and their perception of the film taken of the events. *Evidence was introduced that defendant, prior to trial, altered his appearance by shaving his moustache. The witnesses were able to apply their knowledge of his prior appearance to the subject in the film. Such perception and knowledge was not available directly to the jury.* The opinions of the witnesses were sufficiently based upon personal knowledge to permit their introduction; the question of the degree of knowledge goes to the weight rather than to the admissibility of the opinion." (*Perry, supra*, 60 Cal.App.3d 608, 613; italics added.) The court dismissed appellant's contention that allowing the lay opinion testimony "invades the province of the trier of fact." Analogizing to Evidence Code section 1416, which allows a witness to identify a person's handwriting based upon personal knowledge, the court concluded that the opinion testimony "is submitted to the trier of fact only as an aid in arriving at the ultimate decision" regarding "the identity of the culprit and the defendant's guilt or innocence." (*Id.*, at pp. 614, 615.)

■ *Perry* thus requires two predicates for the admissibility of lay opinion testimony as to the identity of persons depicted in surveillance photographs: (1) that the witness testify from personal knowledge of the defendant's appearance at or before the time the photo was taken; and (2) that the testimony aid the trier of fact in determining the crucial identity issue.

Federal cases interpreting rule 701 of the Federal Rules of Evidence[1] have expressed the latter requirement as one of "helpfulness": the identification or comparison made must be one the jury could not adequately have made for itself. (*United States* v. *Robinson* (2d Cir. 1976) 544 F.2d 110, 113; see also *United States* v. *Ingram* (10th Cir. 1979) 600 F.2d 260, 261.) Furthermore, although *Perry* does not discuss the issue, and there are no other California cases in point which do, federal cases have expressed another concern where the lay identification testimony comes from law enforcement officials: that such testimony will "increase the possibility of prejudice to the defendant in that he [is] presented as a person subject to a certain degree of police scrutiny." (*United States* v. *Butcher, supra*, 557 F.2d 666, 669.) Exclusion is thus warranted if the prejudicial effect of such testimony outweighs its probative value. (*Id.*, at p. 670; *United States* v. *Young Buffalo* (9th Cir. 1979) 591 F.2d 506, 513; *United States* v. *Calhoun* (6th Cir. 1976) 544 F.2d 291, 296.) The Ninth Circuit Court of Appeals in *Butcher* expressed this caveat: ". . . use of lay opinion identification by policemen or parole officers is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution." (*Butcher, supra*, 557 F.2d at p. 670.)

■ Applying these principles to the case at bench, the first issue is whether the prosecution established an adequate personal knowledge foundation for the identification testimony of Officers Brown and Burks. At a hearing held outside the jury's presence, the officers testified as to their past acquaintance with appellant. Brown could not pinpoint the exact number of years he had been aware who appellant was, but had seen him "on numerous occasions" in the 10 years Brown had been on the force. He had been within speaking distance of appellant "several times" and had become familiar with appellant's features, but had never actually conversed with him. Brown had seen appellant as recently as two weeks before the robbery. When shown the surveillance photographs the day of the robbery, he studied them "just momentarily" before concluding that appellant was one of the depicted robbers. When asked if there were any distinctive characteristics in the photograph, he stated: "There was to me. There may not have been to anybody else, but there are some characteristics that right away gave

---

[1]Rule 701, basically identical to California Evidence Code section 800, provides: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

me the identity of who it was." Defense counsel read Brown his preliminary hearing testimony that he had only known appellant for a year or less, and had had face-to-face contact with him only once, at a point two weeks prior to the robbery.

Burks, also testifying out of the presence of the jury, stated he became acquainted with appellant about eight years prior to the hearing[2] and had seen him "quite a few" times since then. Burks had been appellant's counselor at CYA. He had spoken to appellant face-to-face quite a few times, for periods up to two hours. Burks "possibly" had seen appellant a couple of months prior to the robbery, but did not, for example, know of appellant's particular features—e.g., hair style or facial hair—the day preceding the robbery. He had not seen appellant very often in the year preceding the robbery. When shown the surveillance photos, Burks "automatically" and without doubt concluded that appellant was depicted. Even though the subject's cap was pulled down below the ears, Burks could recognize appellant's mouth, nose, cheek, chin, and sideburn features. He also knew that appellant was one of "very few" sets of twins on Fresno's west side.[3]

In view of the foregoing, it is clear that the officers possessed requisite personal knowledge of appellant's appearance. Both had had numerous prior contacts with appellant; the fact that Brown had never conversed with appellant is not controlling. Brown saw appellant within two or three weeks prior to the robbery, and although this was apparently Brown's only "face-to-face" contact with appellant, Brown had over the years familiarized himself with appellant's features through street contacts. Burks, appellant's counselor at CYA, had known appellant for up to 10 years, and had had several conversations with him for periods up to 2 hours. Despite the fact that he had not seen appellant very frequently in the year preceding the robbery, and had last seen him perhaps two or three months before the robbery, he was undeniably familiar with appellant's features. The case is similar to *United States* v. *Butcher, supra*, 557 F.2d 666, wherein the identifying witnesses' contacts with the defendant had ended four months prior to a photographed robbery. (*Id.*, at p. 667.) The court noted a problem whether the witnesses knew how the defendant looked at the time of the rob-

---

[2]When testifying in front of the jury, Burks stated he had known defendant "approximately 10 years."

[3]Appellant's twin brother, Ronald, was in prison at the time of the robbery. Counsel stipulated that Ronald Mixon was not in the Fresno area at the time of the offense.

bery, and defendant's appearance at trial more closely resembled his appearance at the time of the robbery. (*Id.*, at p. 669.) The court nonetheless upheld the trial court's decision to allow the testimony. (*Id.*, at p. 670.) Moreover, the present case is distinguishable in that appellant had shortened his sideburns and grown a moustache between arrest and trial. His appearance at the time of the robbery was thus more consonant with the officers' prior perception than it was with his appearance at trial.

Both officers had had ample prior contact with appellant. Both identified him unequivocally and without hesitation. "[T]he question of the degree of knowledge goes to the weight rather than to the admissibility of the opinion." (*Perry, supra*, 60 Cal.App.3d 608, 613.) We thus reject appellant's argument that insufficient foundation was laid for the testimony.

█ The next issue is whether the testimony would have aided the jury's identification of the man depicted in People's exhibit 1. In *Perry*, the witnesses' testimony was helpful to the jury because "[t]he witnesses were able to apply their knowledge of [the defendant's] prior appearance to the subject in the film," perception and knowledge which were "not available directly to the jury." (*Perry, supra*, 60 Cal.App.3d at p. 613.) Further guidance is gleaned from *Butcher, supra*, 557 F.2d 666, wherein the court was concerned that the jury could have made the identification, by comparing defendant to the photographs taken, because "[n]o evidence was submitted that the photographs did not clearly depict the robber, or that defendant's appearance had so radically changed that additional identification evidence was necessary." (*Id.*, at p. 669.)

In the present case, the surveillance photograph was not a clear depiction of the subject, and appellant had changed his appearance before trial. The officers thus could offer aid to the jury as to the identity of the second robber. As appellant asserts, the photograph taken of appellant the day of his arrest—which was the same day the robbery occurred—was admitted, and the jury thus had evidence of his appearance the day of the robbery. However, the officers' testimony was nonetheless helpful in that their previously acquired familiarity with appellant's features could aid identification of the partially depicted subject in the surveillance photo. Moreover, a "mug shot" reveals its subject in only two poses in a particular lighting; the officers—partic-

ularly Officer Burks—had seen appellant in a variety of contexts both indoors and outdoors and could aid the jury in identifying the person in the surveillance photo, taken at a downward angle in somewhat weaker lighting and of a partially obscured subject. Further, the jury took both the surveillance and arrest photos, along with the other exhibits, into the jury room and could easily have made the comparison suggested by appellant.

*State* v. *Jamison* (1980) 93 Wn.2d 794 [613 P.2d 776], cited by appellant, is not to the contrary. That case merely held that special knowledge of a witness as to a defendant's appearance at the time a surveillance photo was taken is not *in itself* sufficient to support identification testimony: the jury can simply compare the photo with the defendant, who is in the jury's presence, and decide for itself the identification issue. (93 Wn.2d at p. 799 [613 P.2d at p. 779].) The court, however, continued: "In reaching this conclusion, however, we do not suggest that opinion testimony of identification based on knowledge of a defendant's appearance at or near the time of taking a surveillance photograph necessarily is inadmissible. Where such knowledge can actually assist the jury in correctly understanding matters that are not within their common experience, such opinion testimony is admissible. Here there was no evidence that, for example, the photographs failed to clearly or accurately depict the robber, or that defendant's appearance had changed or had been altered prior to trial or that he had certain peculiarities not readily comparable under trial conditions." (*Ibid.*; see also *State* v. *Carbone* (1981) 180 N.J.Super. 95 [433 A.2d 827]; *State* v. *Demouchet* (La. 1977) 353 So.2d 1025.) Because such evidence was present in the case before us, the officers' testimony assisted the jury and was properly admitted on this point. The jury was properly instructed that it was not required to accept the opinion testimony but was to merely give it the weight to which it felt the opinion was entitled (CALJIC No. 2.81); the court further instructed on the factors to consider in judging the believability of a witness and the weight to be given that witness (CALJIC No. 2.20). The court did not abuse its discretion in allowing the evidence on this basis.

■ The final step is to determine whether the prejudice attending use of such testimony outweighed its probative value. As noted previously, there is a danger that when law enforcement officers testify about the bases of their acquaintance with defendant's appearance, defendant could be presented as subject to a degree of police scrutiny. The

danger of prejudice is dissipated, however, where foundational facts supporting the officers' knowledge are established outside the jury's presence. (*United States* v. *Butcher, supra*, 557 F.2d 666, 670.)

In this case, the foundational facts were established in a hearing held outside the jury's presence. (Evid. Code, § 402, subd. (b).) During trial, however, the officers were asked how long they had known appellant and whether they could recognize his features. Defense counsel never objected to these questions, and in fact attempted to impeach the officers by further probing the degree of their prior contacts with appellant. Counsel thus made a tactical choice to allow the testimony so that he could attempt to reveal to the jury an insufficient basis for the officers' identification.

Moreover, the potential for prejudice was further diminished by the testimony itself in this case. During cross-examination, Officer Brown testified as follows:

"Q. You say you had seen Donald before that time; is that right?

"A. Yes.

"Q. But you had never spoken to him; is that right?

"A. That's right.

"Q. And in fact you had never had any face to face contact with him or personal contact?

"A. That's correct.

"Q. Is it correct that the only time you had seen him is sometime that you had driven by and seen him on the street or when he drove by in a car and you were on the street?

"A. I guess you would say that. *It's just kind of like in a passing occurrence.* I would be doing something and he would be doing something. *It wasn't that I was looking for him or anything like that.*" (Italics added.) The testimony simply indicated that Officer Brown had seen appellant on the street during patrol. There was no evidence that police scrutiny had focused on this particular individual.

Officer Burks testified that he had been a police officer for six and one-half years. On direct examination, he testified that he had known appellant for "approximately 10 years." On cross-examination, Burks stated that he had had conversations with the defendant "over seven years ago." The jury was not told the subject of these conversations, nor the fact that they had taken place in the California Youth Authority when Officer Burks was a parole officer. Since the conversations took place before Officer Burks joined the Fresno Police Department, there was nothing to indicate to the jury that the conversations had anything to do with defendant's involvement in criminal activity. At the close of cross-examination, after reaffirming his close contact with appellant years before, the testimony was as follows:

"Q. But isn't it correct that in at least the past two or three years, you have had very little contact with Donald other than to see him on the street?

"A. True." Once again, the testimony of Officer Burks did nothing more than indicate that the officer had seen appellant on the street and was acquainted with his appearance.

Even if defendant had been depicted as someone under police scrutiny, the possible prejudice resulting therefrom would not in itself be sufficient to disturb the trial court's discretion to admit otherwise probative evidence. (See *Butcher, supra*, 557 F.2d at p. 670.) Because of its concern for the possible prejudicial effect of law enforcement testimony, the federal approach expressed in *Butcher* seems to be a proper refinement of the holding of *People* v. *Perry*. Thus, as has already been stated, ". . . use of lay opinion identification by policemen or parole officers is not to be encouraged, and should be used only *if no other adequate identification testimony is available* to the prosecution." (*Butcher, supra*, 557 F.2d at p. 670; italics added.)

This opinion should not be interpreted to stand for the proposition that if nonlaw enforcement testimony is available, law enforcement identification testimony must be excluded. The trial courts, in weighing possible prejudice, must determine if the nonlaw enforcement testimony available is "adequate." The prosecution should not be forced to rely on testimony that is weak simply because it comes from an individual not involved in law enforcement. The trial judge maintains the discretion to determine if the prejudicial effect of the officer's testimony substantial-

ly outweighs its probative value (Evid. Code, § 352), and such a discretionary ruling will be overturned only if there is a clear abuse of discretion.

The trial court in this case did not abuse its discretion in allowing the officers' lay opinion testimony.

## II

Appellant next urges that his motion to set aside the information (Pen. Code, § 995) and motion for acquittal (Pen. Code, § 1118.1) should have been granted due to insufficient evidence. Neither contention is persuasive.

Penal Code section 995 requires that an information be set aside if the defendant has been committed without reasonable or probable cause. "'Probable cause is shown if a man of ordinary caution or prudence could entertain a strong suspicion of guilt of the accused, and if some rational ground exists for an assumption of guilt the indictment [or information] will not be set aside.'" (*People v. Backus* (1979) 23 Cal.3d 360, 387 [152 Cal.Rptr. 710, 590 P.2d 837].) In reviewing on appeal a challenge to an indictment or information, a court "may not substitute its judgment for that of the grand jury or magistrate in determining the sufficiency of the evidence and must draw all reasonable inferences in support of the indictment or information." (*Id.*, at p. 391.) Thus, "'. . . if there is some evidence to support the information, the court will not inquire into its sufficiency.'" (*People v. Patino* (1979) 95 Cal.App.3d 11, 25 [156 Cal.Rptr. 815], quoting *Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].)

At appellant's preliminary hearing, Jeffrey Bottorff, the gas station cashier, testified much as has already been indicated in the factual summary. Moreover, Officer Brown identified appellant in the surveillance photograph, thus generating a strong suspicion that appellant had participated in the robbery. As discussed in the previous section, Brown's identification testimony was competent. Even if it had not been, Bottorff's testimony in conjunction with the presence of the surveillance photograph alone could have established a rational basis for holding appellant to answer the charges in the information. Appellant's motion to set aside the information was, therefore, properly denied.

■ Penal Code section 1118.1 requires that the trial court enter judgment of acquittal upon the defendant's motion "if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." The trial court must therefore apply the same test utilized by an appellate court in reviewing the sufficiency of evidence to sustain a judgment of conviction. (*People* v. *Wong* (1973) 35 Cal.App. 3d 812, 828 [111 Cal.Rptr. 314].) That is, "the court must review the whole record in the light most favorable to the [prosecution] to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].)

The evidence presented at appellant's trial met this test. The police officers positively and unequivocally identified appellant as the person depicted in the surveillance photograph of the robbery. Moreover, the jury could be—and was—given the surveillance photographs to examine in their deliberations. Bottorff's testimony, though insufficient in itself to place appellant at the scene of the crime, constituted further circumstantial evidence of guilt. Finally, a dollar bill taken from appellant upon his arrest bore the words "West and McKinley," the address of the robbed gas station. The trial judge had before him more than enough evidence that the issue of appellant's guilt should be given to the jury.

The denial of appellant's Penal Code section 1118.1 motion was proper.

## III

■ Appellant next asserts that his trial counsel's failure to object to the officers' identification testimony on Evidence Code section 352 grounds deprived him of effective assistance of counsel. As appellant notes, defense counsel below made no fewer than five separate objections to the prosecution's use of the officers' identification testimony. The objections were made at the following stages: when the testimony was originally introduced at the preliminary examination; at a hearing held on appellant's motion to set aside the information; at the pretrial foundational hearing; prior to the testimony of Officer Brown; and in a

motion to strike the testimony of Officers Brown and Burks following their testimony. Appellant urges, however, that defense counsel's failure to object to the testimony on Evidence Code section 352 grounds—i.e., that the probative value of the testimony was substantially outweighed by its prejudicial effect—deprived appellant of effective representation. This argument is meritless.

 In raising a claim of ineffective assistance of counsel, an appellant must show that (1) "trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates . . . ," and (2) "counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) If the record on appeal contains any explanation for the challenged aspect of representation, "the court must inquire whether the explanation demonstrates that counsel was reasonably competent and acting as a conscientious, diligent advocate." (*Ibid.*) Where the record sheds no light on why counsel acted or failed to act in the manner challenged, an ineffective assistance claim must fail "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . ." (*Id.*, at p. 426.)

 The record in this case sheds some light on why trial counsel failed to expressly raise an Evidence Code section 352 motion to exclude the officers' testimony. As noted previously, a trial court's decision to admit or exclude lay opinion identification testimony is a matter of discretion. At the pretrial foundational hearing held in this case, defense counsel strenuously and diligently appealed to the trial judge to exclude the officers' testimony, stating, at various points, that it would be a "dangerous procedure," that the trial would "degenerate horribly," and that a "gross injustice" would result if the court allowed the identification testimony given the limited extent of the officers' prior acquaintance with appellant. In concluding that the testimony would be admissible, the court balanced these assertions against the prosecution's assertion that the officers' testimony would be highly probative and crucial to the People's case. Having failed in his efforts to invoke the court's discretion to exclude the evidence, defense counsel could justifiably have believed that an Evidence Code section 352 motion would be superfluous: it was quite obvious the trial court felt the probative value of the testimony outweighed its prejudicial effect. In no conceiv-

able way can it be said that trial counsel failed to act as a competent and diligent advocate in attempting to exclude the testimony.[4]

■ Appellant further asserts that trial counsel's failure to object to the officers' testimony concerning their prior contacts with appellant denied appellant effective representation. It has been noted that allowing police officers to testify as to their prior acquaintance with a defendant creates potential prejudice by presenting defendant as one subject to a certain degree of police scrutiny. (See *United States* v. *Butcher, supra*, 557 F.2d 666, 669.) However, trial counsel's failure to object was almost certainly "an informed tactical choice" (*Pope, supra*, 23 Cal.3d at p. 425): by allowing the officers to testify as to the bases for their ability to identify appellant, defense counsel preserved his ability to undermine the identifications through cross-examination. The officers' identifications were the key prosecution evidence in the case, and trial counsel justifiably felt it imperative to present to the jury the true extent of the officers' previous contacts with appellant. Counsel, in fact, did cross-examine the officers on this subject. In this way, counsel diligently attempted to impeach the officers' identifications.

Appellant received fully competent representation at trial. Indeed, it is difficult to conceive how counsel could have done anything else humanly possible to keep the identification testimony from the jurors. The ineffective assistance argument is precisely the type of second-guessing decried by the Supreme Court in *People* v. *Pope, supra*, 23 Cal.3d 412, 426.

## IV

■ The trial court did misstate the evidence in sentencing appellant to five years imprisonment, the upper base term for robbery. The court stated its reasons for the upper base term as follows: "A victim was particularly vulnerable working late at night at a self-service gas station. The defendant has previously been engaged in and currently has been engaged in a pattern of violent conduct which indicates a serious danger to society. The defendant's actions involved threat of bodily

---

[4]It should be noted that after the officers' testimony was given, defense counsel mentioned numerous grounds supporting his motion to strike the testimony. One of the objections made was that the testimony was prejudicial, although counsel did not specifically mention Evidence Code section 352. Counsel stated: "I think the testimony was improperly admitted and is highly prejudicial to the defendant and I am moving to strike the testimony.'

harm *and he did strike the victim in the face with his fist in the inci-dent offense.* That his past performance on probation and juvenile probation and CYA parole has been unsatisfactory. The defendant's previous and prior convictions and/or adjudications are numerous and appear to be increasingly serious." (Italics added.) The court found no circumstances in mitigation. (*Ibid.*) At trial, cashier Jeffrey Bottorff testified that appellant's companion, and not appellant, had struck him in the face during the course of the robbery. Appellant therefore urges the case should be remanded for resentencing.

Although the court erred in describing the evidence, in view of the other aggravating factors listed by the trial court it is not reasonably probable a different base term would have been imposed in the absence of error. The present case is similar to *People v. Boerner* (1981) 120 Cal.App.3d 506 [174 Cal.Rptr. 629], in which the trial court had improperly considered the defendant's leadership role in the commission of a crime in imposing the upper base term for attempted robbery. (*Id.*, at p. 509.) The sentence was, however, upheld because the trial court had noted numerous other aggravating factors in imposing the upper term: the extreme vulnerability of the victims, the dangerous nature of appellant's conduct, his criminal record of increasing seriousness, his probation status when he committed the crime, and his being a danger to society. (*Id.*, at p. 510.) Likewise, in the present case, the factors listed by the court clearly indicate the sentence would not change upon remand. The court below noted the vulnerability of the victim, the threat of bodily harm appellant imposed, his past unsatisfactory performance on probation and juvenile probation, and his numerous and increasingly serious prior convictions.

Because there is not a reasonable probability appellant's sentence would have been different in the absence of the court's error in describing the evidence, remand for resentencing would be pointless.

The judgment is affirmed.

Hanson (P. D.), Acting P. J., and Andreen, J., concurred.

A petition for a rehearing was denied March 17, 1982, and appellant's petition for a hearing by the Supreme Court was denied April 21, 1982.