Filed 8/20/21  P. v. Nicholson CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B304891 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA478503) |
| v. | |
| RANDOLPH NICHOLSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert C. Vanderet, Judge.  Affirmed in part and reversed in part with directions.

Daniel Milchiker, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, David A.

Voet, and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Randolph Nicholson of vandalism resulting in damage less than $400 (Pen. Code, § 594, subd. (b)(2)(A)) and found true a gang allegation under Penal Code section 186.22, subdivision (d).[1]  Nicholson contends that the trial court erred by allowing improper opinion testimony of a police officer who identified Nicholson as the person in a security camera video committing the crime or alternatively that the jury was improperly instructed regarding how to consider lay opinion testimony.  We disagree with Nicholson's lay opinion testimony and instructional error contentions.

Nicholson also contends that the gang expert who testified regarding the predicate offenses required to prove the gang allegation under section 186.22, subdivision (d) relied on and testified based on inadmissible hearsay.  Based on the Supreme Court's recent opinion in *People v. Valencia* (2021) 11 Cal.5th 818 (*Valencia*), we agree.  We will reverse the jury's true finding on the gang allegation and remand that issue to the trial court.

## BACKGROUND

Los Angeles Police Officer Eli Huacuja noticed graffiti on the side of a store called Inner City Market during his patrol on June 6, 2019 that was not there when he patrolled the area on June 1, 2019.  Based on what he saw, Huacuja asked the store owner for access to footage from the security camera that was pointed at the graffitied wall.  Based on his review of the footage, Huacuja determined that the graffiti was painted on the morning

---

[1] Further statutory references are to the Penal Code.

2

of June 3, 2019. In the video, Huacuja saw an individual he described as "a tall individual. He's holding up his pants like they're falling. He has distinct hair. In this case he has dreadlocks type of hair." Huacuja also noticed tattoos on the individual's forearms and that the person had, "like a mustache, goatee type of mustache." As the video progresses, the individual Huacuja described "runs up to the wall [at the Inner City Market] and begins spray painting the white wall."

Based on "approximately 20 . . . consensual encounters" with Nicholson over three years, during which Huacuja observed Nicholson's face, physical features and tattoos, observed his mannerisms—"he always pulls his pants up like his pants are kind of sagging. And . . . his gait, the way he walks"—Huacuja identified Nicholson was the person in the video "tagging" the Inner City Market with graffiti on the morning of June 3, 2019.

The People filed an information charging Nicholson with vandalism under $400 damage (§ 594, subd. (b)(2)(A)) and alleged that he had committed the crime "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (d)).

At the outset of the trial in January 2020, the trial court asked the parties whether identity was an issue. The People responded that "it's pretty clear that it's the defendant on the video." Nicholson's attorney stated that she was not "going to contest that it's the defendant on the video," but would not stipulate to identity. Based on Nicholson's attorney's representation, the trial court noted that identity was an issue in the case.

Over Nicholson's objection, the trial court allowed the People to ask Officer Huacuja whether he had an opinion about the identity of the person he saw in the video tagging the Inner City Market wall on the morning of June 3. The trial court also allowed testimony regarding *how* Officer Huacuja had come to the conclusion that Nicholson was the person in the video, but limited that testimony to consensual encounters only, and excluding testimony about any arrests. In making its ruling, the trial court stated: "[T]he video isn't that clear. It's very difficult for these jurors to identify especially a virtually all white jury and a Black person to evaluate to make an identification on their own. The video is just not that clear . . . ." The trial court instructed the People that "you can have [Officer Huacuja] talk about how many times he's had contact with the defendant before, how long the contacts were, that sort of stuff. I don't want any reference to criminal activity."

Officer Huacuja opined for the jury that Nicholson was the person in the video.

The People called Los Angeles Police Officer Chad Scott to testify as their criminal street gang expert witness. To prove predicate offenses necessary to support gang allegations, Officer Scott testified about a September 14, 2016 robbery committed by Chaka Thomas Daniels and a March 24, 2019 felony vandalism committed by Kyle Williams. Officer Scott's knowledge of the offense underlying the Daniels conviction was that he was "partnered with the primary investigating officer" in the Daniels matter, that Officer Scott had "reviewed [his partner's] report [in the Daniels matter] and he's discussed the case with" Officer Scott. Officer Scott knew about the Williams matter because he

4

"had personal contact with [Williams] and . . . assisted in the investigation" of the Williams matter.

The jury found Nicholson guilty of vandalism and found true the gang allegation.  The trial court suspended imposition of sentence and placed Nicholson on probation for three years after 180 days in county jail.[2]

Nicholson filed a timely notice of appeal.

## DISCUSSION
### A. Lay Opinion Testimony & Instruction

Nicholson contends that the trial court abused its discretion by admitting Officer Huacuja's lay opinion testimony that Nicholson was the person in the security camera footage shown tagging the Inner City Market on June 3, 2019.  Nicholson also contends that if admitting the testimony was *not* an abuse of discretion, that the trial court erred when it did not instruct the jury—even though Nicholson did not request such an instruction—how to view lay opinion testimony.  We disagree with both of Nicholson's lay opinion testimony contentions.

Nicholson relies on *People v. Mixon* (1982) 129 Cal.App.3d 118 (*Mixon*), *People v. Ingle* (1986) 178 Cal.App.3d 505, and *People v. Leon* (2015) 61 Cal.4th 569 (*Leon*) to support his argument that the trial court abused its discretion by admitting Officer Huacuja's opinion that Nicholson was the person in the security camera video spray painting the side of the Inner City Market.

According to our Supreme Court in *Leon*, "[a] lay witness may offer opinion testimony if it is rationally based on the

---

[2] The trial court noted on the record that it was sentencing Nicholson "[i]n accordance with the agreement of the parties."

5

witness's perception and helpful to a clear understanding of the witness's testimony." (*Leon*, *supra*, 61 Cal.4th at p. 601, citing Evid. Code, § 800.) *Leon* reaffirmed that the " 'identity of a person is a proper subject of nonexpert opinion . . . .' " (*Leon*, at p. 601.) "Courts of Appeal decision," the Supreme Court explained, "have long upheld admission of testimony identifying defendants in surveillance footage or photographs." (*Ibid*.)

Decades earlier, the *Mixon* court explained that the "two predicates for the admissibility of lay opinion testimony as to the identity of persons depicted in surveillance photographs [are]: (1) that the witness testify from personal knowledge of the defendant's appearance at or before the time the photo was taken; and (2) that the testimony aid the trier of fact in determining the crucial identity issue." (*Mixon*, *supra*, 129 Cal.App.3d at p. 128.) *Mixon* explored the second of the two elements as akin to "helpfulness" as the issue was discussed in federal cases under the parallel Federal Rule of Evidence. (*Id*. at p. 129.) Nicholson does not challenge Officer Huacuja's personal knowledge of Nicholson's appearance, rather Nicholson's argument focuses on whether his testimony could be helpful to the jury.

Nicholson argues that he had not changed his appearance and the video was clear. All the jury would be required to do to make the identity decision for themselves, Nicholson argues, is watch the video and look at Nicholson sitting in the courtroom.

We need not consider whether the jury *could* have made an identity decision for itself without Huacuja's assistance. Rather we need only decide whether the trial court abused its discretion when it concluded—expressly—that Huacuja's opinion testimony would assist the jury in making that identity decision.

Whether the video was clear or not, and whether Nicholson had changed his appearance or not (the record is silent as to this question), Huacuja testified that he had met and observed Nicholson approximately 20 times over the course of three years, that he had observed and was familiar with Nicholson's face, his physical features, and his tattoos—things that a jury might be able to see in a video and compare to a person sitting in the courtroom. Huacuja testified that he was *also* familiar, however, with Nicholson's mannerisms; that he was familiar with Nicholson's habit of pulling up his pants "like his pants are kind of sagging" and Nicholson's gait—"the way he walks." Huacuja testified that *all* of Nicholson's characteristics that he was familiar with because of having met and observed Nicholson approximately 20 times over three years were the way that he quickly identified Nicholson as the person in the security camera video footage. That is all information that would be helpful to the jury as they attempted to determine for themselves whether they believed Nicholson was the person in the video.

The trial court did not abuse its discretion when it admitted Officer Huacuja's opinion testimony identifying Nicholson as the person in the security camera video footage.

Neither can we conclude that the trial court erred by failing to sua sponte instruct the jury regarding the proper way to consider lay opinion testimony. Nicholson acknowledges that he did not request an instruction on lay witness opinion testimony. Without citing any authority for the proposition that the trial court had a sua sponte duty to so instruct the jury, Nicholson's argument asks us to create that duty.

Where there is expert opinion offered during a trial, the trial court must instruct regarding how the jury should handle

7

expert opinions. (See *People v. Carter* (2010) 182 Cal.App.4th 522, 532.) That instruction is mandatory—the trial court must give it whether the defendant requests it. (*Ibid.*; § 1127b.) There is no parallel requirement for *lay* opinions. To be sure, the Penal Code provision mandating an instruction regarding expert opinion *expressly disclaims that requirement for other opinion testimony*: "No further instruction on the subject of opinion evidence need be given." (§ 1127b.)

While it *may* be the case that a trial court should give an instruction regarding lay opinions *when the defendant requests it and the evidence supports it*, there is no such requirement when the instruction has not been requested. We will not create that obligation here.

## B. Gang Expert Testimony

The People's criminal street gang expert witness, Officer Chad Scott, testified about two predicate offenses necessary under section 186.22 to support the gang allegation in the information. Nicholson and the People agree that Officer Scott had personal knowledge regarding the circumstances of one of the predicate offenses, a 2019 felony vandalism committed by Kyle Williams, but not the other, a 2016 robbery committed by Chaka Thomas Daniels.

On July 1, 2021, the Supreme Court issued its opinion in *Valencia, supra*, 11 Cal.5th 818. In that opinion, the Supreme Court held "that the commission of . . . predicate offenses [under section 186.22] must be proven by independently admissible evidence. Under the authority of *People v. Sanchez* (2016) 63 Cal.4th 665 . . . , such proof may not be established solely by the testimony of an expert who has no personal knowledge of facts

otherwise necessary to satisfy the prosecution's burden." (*Id.* at p. ___.)

Because *Valencia* was decided after the parties' principal briefs had been filed, we requested supplemental briefing regarding the effect of *Valencia* on this appeal. The People acknowledged Officer Scott's testimony regarding the Daniels predicate offense that his knowledge was based on having reviewed his partner's police report and discussing the case with his partner, who had investigated the crime. But the People argued that "Officer Scott's testimony regarding the predicate offense by Daniels was independently proven by admissible evidence (the certified court records), and he had personal knowledge regarding Daniels'[s] gang membership."

Officer Scott's testimony regarding how he gained an understanding of Daniels's gang membership places Scott's testimony about the Daniels predicate offense squarely within the range of evidence *Valencia* prohibits. In *Valencia*, the gang expert witness's testimony about predicate offenses "came from conversations with other officers and a review of police reports." (*Valencia, supra*, 11 Cal.5th at p. ___.) That type of information, *Valencia* explained, amounts to "unsubstantiated assertions of fact" that an expert is trying to "place before the jury." (*Id.* at p. ____.) "Experts with no personal knowledge of case-specific facts, or who do not rely on other admissible evidence establishing those facts, are simply 'regurgitat[ing] information from another source.' " (*Id.* at p. ___, citing *People v. Veamatahau* (2020) 9 Cal.5th 16, 34.) "Without independent admissible evidence of the particulars of the predicate offenses, the expert's hearsay testimony cannot be used to supply them. In the absence of any additional foundation, the facts of an individual case are not the

9

kind of general information on which experts can be said to agree." (*Valencia*, at p. ____.)

The People argue that even if the evidence of the Daniels conviction was foreclosed by *Valencia*, the jury's conclusion that Nicholson committed vandalism would suffice as the second predicate for purposes of section 186.22. Nicholson counters, however, that only *felony* vandalism suffices as a gang predicate offense. (See § 186.22, subd. (e)(20).) Nicholson points out that he was charged with *misdemeanor* vandalism, which will not support the gang enhancement.

Nicholson is correct.

Vandalism under $400 is a misdemeanor; vandalism *over* $400 is a felony. (See *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 906.) Even *misdemeanor* vandalism, however, may become a felony for sentencing purposes under section 186.22. (*People v. Arroyas* (2002) 96 Cal.App.4th 1439, 1444.) It is possible, then, that Nicholson's conviction—if upheld—could eventually serve as a predicate offense for a gang allegation in some subsequent case. But because it is a true finding on the gang allegation that turns what would be a misdemeanor into a felony, it cannot support the gang allegation *in this case*. The felony did not exist before the jury found the gang allegation true. Consequently, the People had proven only *one* predicate offense under section 186.22.

Consistent with the Supreme Court's opinion in *Valencia*, we reverse the jury's true finding on the gang allegation and remand to the trial court for retrial of the gang allegation if the People elect to retry that issue or for resentencing if the People choose not to retry the gang allegation. (*Valencia*, *supra*, 11

10

Cal.5th at p. ___, fn. 7; *People v. Ulloa* (2009) 175 Cal.App.4th 405, 413.)

## DISPOSITION

The judgment of conviction is affirmed. The jury's true finding on the gang allegation is reversed. On remand, the People may retry the gang allegation. If the People elect not to retry the gang allegation, the trial court will resentence Nicholson consistent with this opinion.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

CRANDALL, J.[*]

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.