Filed 10/3/25  P. v. Acevedo CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C100490 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CR001892) |
| v. | |
| ELFEGO CHAVEZ ACEVEDO, | |
| Defendant and Appellant. | |

The People charged defendant Elfego Chavez Acevedo with murder.  At trial, the People showed the jury surveillance video of the murder suspect approaching the victim.  The People also showed the jury still frames from the surveillance video, and a police detective testified that certain dark areas visible on the suspect's body in the grainy surveillance footage were consistent with defendant's tattoos.  On appeal, defendant contends the trial court erred by permitting the detective to offer this opinion.  We conclude the trial court did not abuse its discretion and will affirm.

BACKGROUND

A man carrying his shirt and displaying tattoos on his chest and the back of his neck got out of a car in front of a grocery store.  He walked over to where Arturo Bent was seated outside the store and began arguing with Bent.  During the argument, Bent signaled to a woman he knew to come over to him.  When the woman neared Bent, he told her, "[t]his

1

guy thinks I raped his sister." The tattooed man immediately drew a gun from his pants and shot Bent in the chest, killing him.

Detective Sean Baxter from the Red Bluff Police Department investigated the murder. Witnesses told Detective Baxter that a man nicknamed "Preacher" had shot Bent. Detective Baxter asked other agencies if they knew any individuals who were known as "Preacher," and the parole department responded that defendant was known by that nickname. Detective Baxter then obtained booking photographs of defendant from Tehama County Jail.

Detective Baxter also watched the surveillance video from the grocery store, which showed a shirtless man with a gun tucked in his waistband approaching Bent's location at the time of the shooting. The recording was grainy and dark, so Detective Baxter watched the video frame by frame. He took photographs of the still frames and enlarged and lightened the pictures using his cell phone to better show what appeared to be tattoos on the shirtless man's body.

At trial, in addition to witness testimony about the shooting, the People showed the surveillance video to the jury, with the store manager testifying to its authenticity. The People then showed the jury enlarged versions of defendant's booking photographs and the still frames Detective Baxter had taken from the surveillance video. The prosecutor asked Detective Baxter to identify significant details in the still-frame photographs he created, and the detective pointed out tattoos on the shirtless man's shoulders, on both sides of his upper chest, above his left nipple, across his abdominal area, and on the back of his neck.

The prosecutor then asked Detective Baxter to describe the similarities between the jail booking photographs of defendant and the still-frame photographs from the shooting. Defendant's counsel objected that the detective was giving an improper opinion that "goes farther than what we have been doing as far as potential similarities based on the officer's viewing of these things over time." The trial court overruled the objection. Detective Baxter stated that the blurry shapes in the still-frame photographs, although he could not

discern what they depicted, appeared to match the locations and shades of the tattoos in defendant's booking photograph. The detective also stated that he did not see any tattoos in the still-frame photograph that did not appear in the booking photograph.

The jury found defendant guilty of the first degree murder of Bent and found true the allegation that defendant personally and intentionally discharged a firearm causing great bodily injury and death. In a bifurcated proceeding, the trial court found true the allegations that defendant had previously been convicted of two serious felonies. The court sentenced defendant to 110 years to life in prison. Defendant filed a timely notice appealing from the judgment.

## DISCUSSION

Defendant contends the trial court erred by allowing Detective Baxter to offer nonexpert opinion testimony identifying defendant as the person in the surveillance video. We note that defendant's framing of the issue is imprecise. In fact, Detective Baxter testified that the tattoos on the man in the surveillance video matched the tattoos on defendant in his jail booking photographs, without offering a further opinion about the identity of the man. We see no abuse of discretion in the admission of this testimony.

" 'A lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of his testimony.' " (*People v. Gonzalez* (2021) 12 Cal.5th 367, 411; Evid. Code, § 800.) " 'A trial court's ruling on the admission or exclusion of [such] evidence is reviewed for abuse of discretion.' " (*Gonzalez*, at p. 411)

Lay opinion testimony is helpful to a clear understanding of the witness's testimony when, for example, a police investigator testifies that a stain seen in surveillance video on a defendant's pants is "consistent with blood." (*People v. Phillips* (2022) 75 Cal.App.5th 643, 681, 684-686 (*Phillips*).) In *Phillips*, the investigator viewed surveillance of the defendant entering and exiting the victim's apartment. (*Id.* at pp. 648, 681.) He testified that he saw a stain on the defendant's pants in one video clip that he had not seen in the earlier clips and

then saw an additional stain appear in later clips. (*Id.* at pp. 681-682.) The investigator knew that police had found the victim in his apartment with large pools of blood near his body and blood spatter on furniture, walls, and other items. (*Id.* at pp. 648, 681.) Based on these facts, the investigator stated that he " 'thought it was blood' " on the defendant's pants in the surveillance footage. (*Id.* at p. 681.)

The appellate court concluded that the trial court had not abused its discretion by permitting the investigator to testify to his opinion about the stains on the defendant's pants. (*Phillips*, *supra*, 75 Cal.App.5th at p. 686.) With regard to whether the investigator's opinion was helpful to a clear understanding of his testimony, the court explained that the "testimony aided the jury (and th[e appellate] court) in reviewing the video clips by pointing out where and when the stains appeared on the video footage." (*Id.* at p. 685.) The court noted that lay people would see the stains on the surveillance footage only if they knew "when and where to look for them and slow[ed] or stop[ped] the video footage sufficiently to focus on them." (*Ibid.*) The investigator's "testimony was helpful to the jury because it identified something subtle, the presence and significance of which likely would not have been seen or understood by jurors watching the videotape without it" and because it "provided connections between dots, that is, items of evidence, in a way that was helpful to the jury." (*Ibid.*) The court also explained that "[s]imilar testimony pointing out the stains without explaining why they were potentially significant would have been confusing, not helpful, to the jury." (*Ibid.*)

Similar reasoning applies in this case. The grocery store surveillance video is grainy and dark and Detective Baxter identified subtle differences in shading that he believed to be tattoos. Even using the still-frame photographs enlarged and lightened by Detective Baxter, the jury may not have noticed or understood the significance of the slightly darker pixels in certain locations, which the detective identified as consistent with defendant's tattoos. Like in *Phillips*, Detective Baxter "provided connections between dots, that is, items of evidence, in a way that was helpful to the jury." (*Phillips*, *supra*, 75 Cal.App.5th at p. 685.) Had

Detective Baxter showed the jury the still-frame, lightened photographs he created without explaining why they were potentially significant, his testimony "would have been confusing, not helpful, to the jury." (*Ibid.*) Accordingly, we conclude the trial court did not abuse its discretion in finding that the detective's testimony met the requirements for admission under Evidence Code section 800.

Defendant contends that Detective Baxter's testimony was not based on his "knowledge" but rather was based on the photographs he was comparing. Defendant misunderstands the statute. The opinion must be "[r]ationally based on the perception of the witness," not on any prior knowledge. (Evid. Code, § 800, subd. (a); see *People v. Leon* (2015) 61 Cal.4th 569, 601 [whether detective perceived defendant's appearance before or after commission of crime is "a distinction without a difference"].) The rule does not limit what a witness can perceive. As we have already explained, a witness's perception may be "what he saw on the video surveillance camera." (*Phillips*, *supra*, 75 Cal.App.5th at p. 685.) The fact that Detective Baxter looked at still frames from the surveillance video does not make his opinion inadmissible.

Defendant also contends that Detective Baxter's testimony was not helpful because "the jury could have made that comparison itself." Defendant points to *People v. Mixon* (1982) 129 Cal.App.3d 118, but that case did not find an abuse of discretion in admitting lay opinion testimony. Rather, in *Mixon*, the court allowed police officers to testify about the identity of a robber in a surveillance photograph over the defendant's objection that the jury alone should compare the surveillance photographs to the arrest photographs because "the surveillance photograph was not a clear depiction of the subject, and appellant had changed his appearance before trial." (*Id.* at p. 131.) The court also noted that "the jury took both the surveillance and arrest photos, along with the other exhibits, into the jury room and could easily have made the comparison suggested." (*Id.* at p. 132.)

These same considerations are present in this case. The still-frame photographs are dark and grainy, and the relevant details are difficult to discern. And, as in *Mixon*, the jury

5

was shown the surveillance video and all the photographs, so it could have made the comparison itself if it disagreed with the detective's assessment. We also note that the trial court instructed the jury with CALCRIM No. 333, regarding opinion testimony of lay witnesses, which informed the jury: "You may but are not required to accept those opinions as true or correct. . . . You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence." This means "the jurors were permitted to decide for themselves" whether they thought the dark areas on the person in the surveillance video were defendant's tattoos, "based on their appearance in the videotape and on all the facts surrounding their appearance." (*Phillips*, *supra*, 75 Cal.App.5th at p. 686.)

Because Detective Baxter's opinion about the similarities between the still-frame photographs and defendant's booking photographs was properly based on his perception and was helpful to a clear understanding of his testimony, the trial court did not abuse its discretion by admitting the testimony.

DISPOSITION

The judgment is affirmed.

\_\_/s/_____

WISEMAN, J.[*]

We concur:

\_\_/s/_____
EARL, P. J.

\_\_/s/_____
ROBIE, J.

---

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6