Filed 1/27/15  P. v. Simpson CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B246895 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA083697) |
| v. | |
| JASON SIMPSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jason Simpson appeals from the judgment entered following his conviction by jury on count 1 – forcible rape, with a court finding he suffered a prior felony conviction. (Pen. Code, §§ 261, subd. (a)(2), 667, subd. (d).)  The court sentenced appellant to prison for sixteen years.  We affirm.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence, the sufficiency of which is undisputed, established that during the evening of June 27, 2002, appellant met Alana S. (Alana) on Pier Avenue in Hermosa Beach, and went with her to his apartment where he said there would be a party.  The two entered appellant's Lawndale apartment.

Alana told appellant there was no party at the apartment and said she had to leave.  Appellant threw her to the floor, tried to strangle her, and threw her on a mattress.  Appellant, on top of Alana, said he was going to kill her.  Appellant told Alana she would have to do whatever he told her.  Appellant, continuing to restrain Alana, ripped her clothes off and, at some point, took his clothes off.

Appellant forcibly raped Alana.  He committed numerous other forcible sexual acts and assaultive acts upon her, and raped her again.  At one point she saw a white powder on a counter, and appellant said he had added the powder to a bottle containing Champagne and orange juice.  Appellant made her drink it.  She did not knowingly consume narcotics on June 28, 2002, and had not drunk alcohol prior to entering appellant's apartment.  She eventually escaped.  Appellant left his apartment with Alana's cell phone and purse.  Alana suffered pain, and had difficulty swallowing, for several months after the incident.[1]

---

[1]     In 2002, Alana moved from West Torrance to Bakersfield with her former husband.  She left her contact information with law enforcement personnel and did not move to make herself unavailable.  Police contacted Alana in 2012 after she moved to Hermosa Beach.

About 7:00 a.m. on June 28, 2002, Los Angeles County Sheriff's Deputy Maurice Llalemand went to Alana's location and she told him about the assault. Alana told Llalemand she earlier had met friends at the Lighthouse Bar and Grill, she was introduced to appellant, and she and appellant conversed and shared a few drinks. Deputies found Alana's bra and underwear inside appellant's apartment.

Merry Parente, a nurse and sexual assault examiner at the Santa Monica Hospital, testified as follows. On June 28, 2002, Parente conducted a sexual assault examination on Alana. Alana was tearful at times, had limited eye contact with Parente, initially had a hoarse voice, and winced with pain while moving and walking. Alana said she suffered from throat and neck pain, breathing difficulty, abdominal pain, and dizziness.

Parente recorded Alana's injuries on a video. The video was played for the jury and admitted into evidence. The video depicted bruising on Alana's neck, arms, inner thigh near her vagina, right knee, and shin. The video depicted abrasions on her ankle, left knee, and back, and depicted redness on her stomach and back. The video also depicted a relatively large bruise on Alana's inner left thigh, immediately next to her vagina. Alana's injuries were fresh.

Parente would have been surprised if consensual sex caused injuries to the extent of Alana's injuries. Parente never had a patient claim that injuries as numerous as those suffered by Alana resulted from consensual sex. The fact Alana had no vaginal injuries was not unusual.

In defense, appellant, who was 32 years old in 2002, testified he had sexual intercourse with Alana on June 28, 2002, but it was consensual.

## ISSUES

Appellant claims (1) the court erroneously excluded evidence of Alana's alleged drug use, vexatious litigant status, and visitation rights, (2) the court erroneously allowed Llalemand to testify Alana was sexually assaulted, (3) the prosecutor committed misconduct when cross-examining Judith Simpson, and (4) cumulative prejudicial error occurred.

*DISCUSSION*

1. *The Trial Court Properly Excluded Evidence of Alana's Alleged Drug Use, Vexatious Litigant Status, and Visitation Rights.*

    a. *The Court Properly Excluded Evidence of Alana's Alleged Drug Use.*

        (1) *Pertinent Facts.*

On October 18, 2012, during direct examination of Alana as part of the People's case-in-chief, and outside the presence of the jury, appellant represented as follows. Appellant had a docket from Alana's marital dissolution proceedings. The docket reflected that on October 10, 2002, Alana failed to undergo drug testing and the failure was deemed a positive test. A drug testing requirement presupposed a previous showing in the dissolution proceedings that Alana had a history of drug abuse.

According to appellant, Alana, during direct examination in the present case, feigned ignorance the white powder on a desk was drugs. Appellant's counsel represented he intended to ask Alana during cross-examination if "she's ever done cocaine" and, if Alana "denie[d] it," appellant's counsel intended to ask if Alana had been required in the dissolution proceedings to undergo drug testing "and, if so, why." Appellant also intended to ask Alana about a 2004 drug conviction for which she was granted deferred entry of judgment. Appellant's counsel argued the evidence would show appellant was "doing drugs with [appellant]" and he was entitled to refute Alana's claim appellant "spiked her with drugs."

The prosecutor argued, inter alia, as follows. The prosecutor did not recall Alana feigning ignorance about the white powder. A violation of Health and Safety Code section 11350, "the basis for the D.E.J.," was not a crime of moral turpitude. Alana never testified she never had used cocaine.

4

The court, pursuant to Evidence Code section 352, excluded evidence about (1) any docket entry on some sort of a divorce proceeding[]"and (2) "any D.E.J. post-event." The court later indicated the proffered evidence "under 352 is not probative, not relevant in the context of what it will permit. Very little value."[2] (*Sic*.)

(2) *Analysis.*

Appellant claims the trial court erroneously excluded the impeachment evidence of Alana's alleged history of drug use, thus violating various constitutional rights of appellant. We disagree.

Fairly read, the record reflects the trial court excluded the evidence of Alana's alleged drug use on the grounds it was irrelevant, and pursuant to Evidence Code section 352. A trial court may, in the exercise of its discretion under section 352, exclude evidence of collateral impeaching facts. (*People v. Lavergne* (1971) 4 Cal.3d 735, 741-744 (*Lavergne*).) An additional factor supporting the exercise of that discretion exists when a party, during cross-examination, elicits testimony about a collateral matter for the purpose of impeaching it. "A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted." (*Id.* at p. 744.)

When ruling on an Evidence Code section 352 motion, a trial court need not expressly weigh prejudice against probative value, or even expressly state it has done so. All that is required is that the record demonstrate the trial court understood and fulfilled

---

[2]     On October 22, 2012, during appellant's redirect examination of Los Angeles County Sheriff's Detective Tasheen Glynn, she testified some female sexual assault victims had "more than their share of stability problems" following the trauma of the assault. Later, outside the presence of the jury, appellant argued as follows. The prosecutor had elicited testimony from Glynn that female rape victims suffered stability problems as a result of the rape. Appellant wanted to present evidence of Alana's drug use, i.e., the previously mentioned October 2002 docket entry and 2004 drug conviction, to show Alana had stability problems before June 28, 2002. Appellant also indicated that during Alana's testimony, she denied having drunk with appellant, but her denial was impeached by Llalemand's testimony Alana said she had drunk with appellant; therefore, her credibility was at issue. Appellant asked the court to reconsider its previous ruling concerning the admissibility of evidence of Alana's alleged drug use. The court indicated its previous ruling would stand.

its responsibilities under section 352.  (*People v. Williams* (1997) 16 Cal.4th 153, 213.) We review for abuse of discretion a trial court's rulings on relevance and/or Evidence Code section 352 objections.  (*People v. Waidla* (2000) 22 Cal.4th 690, 717, 723-724.)

The record of the October 18, 2012 admissibility proceedings reflects appellant proffered, as evidence of Alana's alleged history of drug abuse (1) an alleged October 2002 marital dissolution docket entry reflecting a drug testing requirement imposed on Alana and (2) an alleged 2004 drug conviction she suffered.

However, even if there was evidence of a docket entry reflecting said requirement, that fact did not tend to show Alana abused drugs or had a "history" of drug abuse.  The problem is the paucity of facts accompanying appellant's proffer.  Nothing proffered during the October 18, 2012 admissibility proceedings tended to show (1) whether the testing requirement was imposed because of actual drug use (as opposed to a reasonable preventive measure based on the facts in that case), (2) whether, if Alana used drugs, she did so multiple times, (3) whether, if she used drugs multiple times, how many times and over what period, or (4) whether she had a prescription for any drugs she used.

Moreover, appellant proffered evidence of the testing requirement in part to show Alana had used cocaine in the past, and to show she was "doing drugs with [appellant]" on June 28, 2002, but nothing proffered during the October 18, 2012 admissibility proceedings tended to show the testing requirement had anything to do with cocaine, nor did the docket entry tend to show Alana used drugs on or before June 28, 2002.

Similarly, even if Alana suffered a 2004 drug conviction, that fact did not tend to show Alana abused drugs or had a "history" of drug *abuse*; the prosecutor indicated the drug conviction was based on cocaine *possession*.  Moreover, the fact of a 2004 *conviction* did not tend to show when the underlying *possession* occurred, or that Alana used cocaine or any drug(s) on or before June 28, 2002.

The trial court did not abuse its discretion by concluding the proffered evidence of Alana's alleged history of drug abuse was irrelevant, because the trial court reasonably could have concluded the proffered evidence had no "tendency in reason" (Evid. Code, § 210) to show such a "history."

6

Moreover, appellant's counsel argued the evidence would show Alana was "doing drugs with [appellant]." To the extent appellant thus proffered the docket entry and 2004 conviction to show Alana was using drugs with appellant, appellant was not proffering impeachment evidence but character evidence to prove conduct (see Evid. Code, § 1103, subd. (a)(1)).

Further, even if evidence of the docket entry and 2004 conviction was relevant to show a history of Alana's drug abuse as impeachment evidence, the proffer during the October 18, 2012 admissibility proceeding was essentially that Alana had used drugs on one or more unspecified occasions, *perhaps years* prior to the docket entry and 2004 conviction. Accordingly, appellant's counsel proposed to ask Alana if "she's *ever* done cocaine" (italics added) and, if she denied having done so, appellant proposed to impeach her with the proffered evidence.

In other words, the proffered evidence had no direct bearing on the elements of the present offense or whether appellant was the person who committed it, and did not contradict Alana's testimony about what happened on June 28, 2002. That is, appellant was proffering evidence of collateral impeaching facts. Moreover, it is clear from appellant's colloquy with the court that appellant intended to cross-examine Alana upon these collateral matters for the purpose of eliciting something to be contradicted. The trial court did not abuse its discretion by excluding the proffered evidence pursuant to Evidence Code section 352; the proffered evidence consisted of inadmissible collateral impeaching facts. (C*f. Lavergne*, *supra,* 4 Cal.3d at pp. 741-744).[3]

---

[3] Similarly, the trial court did not err on October 22, 2012 (see fn. 2*, ante*) by affirming its previous ruling excluding the proffered evidence as irrelevant and under Evidence Code section 352.

Further, the central issue at trial, for purposes of this appeal, was whether the June 28, 2002 sexual intercourse was rape or consensual. The evidence appellant raped Alana was strong, and it is not reasonably probable a different result would have occurred absent the alleged evidentiary error; therefore, any such error was not prejudicial. (*Cf. People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

Appellant also claims exclusion of the proffered evidence violated his constitutional rights to confrontation and cross-examination, rights to due process and to present a defense, and his state constitutional right under article I, section 28, former subdivision (d), to introduce relevant evidence. We reject the claim. In light of our previous analysis, appellant has failed to make the requisite showing the prohibited cross-examination would have produced a significantly different impression of Alana's credibility; therefore, no Sixth Amendment violation occurred. (*Cf. People v. Frye* (1998) 18 Cal.4th 894, 946-947.)[4]

b. *The Court Properly Excluded Evidence of Alana's Alleged Vexatious Litigant Status.*

On October 17, 2012, during Alana's direct examination testimony as part of the People's case-in-chief, and outside the presence of the jury, appellant's counsel represented he had documentation showing, "with regard to the . . . divorce," Alana was deemed to be a vexatious litigant "prior to the time that she brought these allegations," and Alana was on a Kern County list of vexatious litigants. Appellant indicated he wanted to cross-examine Alana about the matter.

On October 18, 2012, outside the presence of the jury, appellant represented he wanted to elicit testimony from Alana that she was on the State of California's list of vexatious litigants. Appellant argued the testimony would be relevant to show Alana had a history of making false allegations and she was not credible. Appellant's counsel

---

[4]     Nothing in article I, section 28, former subdivision (d), of the California Constitution compels a different conclusion, since that subdivision expressly states, "Nothing in this section shall affect any existing statutory rule of evidence relating to . . . Evidence Code, [Section] 352."

indicated if Alana admitted being on the list "so be it," but if she denied she was on it he would seek to introduce it into evidence. The court indicated the vexatious litigant list pertained to civil matters, and the court later ruled, "As far as this category of cross-examination under 352, I don't think it is relevant." (*Sic*.)

Appellant claims the trial court erroneously excluded the impeachment evidence that Alana was a vexatious litigant, and the exclusion violated various constitutional rights of appellant. We disagree. Fairly read, the record reflects the trial court excluded the proffered evidence not only on the ground it was irrelevant, but also pursuant to Evidence Code section 352. Any other construction of the trial court's ruling renders superfluous the court's reference to section 352, a section that permits exclusion of otherwise relevant evidence (*People v. Edwards* (2013) 57 Cal.4th 658, 713). The phrase "vexatious litigant" is defined in Code of Civil Procedure, section 391, subdivision (b). As relevant in this case, the subdivision pertains only to *civil* litigation by persons acting *in propria persona*.[5] "[T]he vexatious litigant statutes may properly be employed only in civil cases. [Citations.]" (*People v. Harrison* (2001) 92 Cal.App.4th 780, 787.)

Again, the problem is the inadequacy of the facts in appellant's proffer. Initially, appellant appeared to represent that prior to the allegations appellant committed the rape, Alana had been deemed a vexatious litigant in a divorce case, as a consequence of which she was named on *Kern County's* list of vexatious litigants. Appellant did not specify when, or on what statutory basis or bases, Alana had been deemed a vexatious litigant, or how long that had occurred before she alleged appellant raped her.

---

[5] Code of Civil Procedure section 391, subdivisions (a) and (b), state, in relevant part, "As used in this title, the following terms have the following meanings: [¶] (a) 'Litigation' means any *civil* action or proceeding, commenced, maintained or pending in any state or federal court. [¶] (b) 'Vexatious litigant' means a person who does any of the following: . . . ." (Italics added.) Subdivision (b)(1) through (4) lists four categories, respectively, of various kinds of actions that may be taken in litigation or relitigation, and the first three categories involve actions by persons acting in *propria persona*. Nothing said during the October 17 or 18, 2012 admissibility proceedings in this case provides a basis for concluding the fourth category applied in this case.

Appellant later represented he wanted to elicit testimony from Alana that she was on the *State of California's* vexatious litigant list, and the testimony was relevant to her credibility. Appellant did not then identify the nature of the proceeding(s) concerning which Alana was a vexatious litigant, on what statutory basis or bases she was on that list, whether there was one or more such proceedings, or when the proceeding(s) occurred.

Alana presumably was a party and/or a plaintiff in the above civil proceedings, but she was not a party in the present criminal case, which was brought in the name of the People. Nothing in appellant's representations suggested appellant was a party, or otherwise involved, in any alleged civil proceedings involving Alana, or that there was any connection between the subject matter of any of Alana's alleged civil proceedings, and the subject matter of the present criminal case.

Under the above circumstances, evidence Alana was a vexatious litigant was evidence of collateral impeaching facts. Moreover, it is clear from appellant's colloquy with the court that appellant intended to cross-examine Alana upon these collateral matters for the purpose of eliciting something to be contradicted. The trial court did not abuse its discretion by excluding the proffered evidence under Evidence Code section 352. (*Cf. Lavergne*, *supra,* 4 Cal.3d at pp. 741-744.) Nor did exclusion of the proffered evidence violate appellant's previously mentioned constitutional rights. Finally, because there was strong evidence the June 28, 2002 sexual intercourse was rape and not consensual, the alleged evidentiary error was not prejudicial. (*Watson, supra*, 46 Cal.2d at p. 836.)

c. *The Court Properly Excluded Evidence of Alana's Alleged Visitation Rights.*

On October 17, 2012, during direct examination of Alana as part of the People's case-in-chief, she testified that on June 28, 2002, she was divorcing the father of her four-year-old son. After the June 28, 2012 incident, a detective visited her at her West Torrance residence where she lived with said son. The prosecutor asked where Alana's son was "on the night of these incidents with [appellant]," and she replied, "my ex-husband and I would split the weekends or certain days. So he would have him certain

10

days, or the grandma, his mother, would have him." Alana testified when the "incident" occurred, "[i]t was a day when he had my son."

Later, outside the presence of the jury, appellant's counsel represented Alana had falsely testified she had "custody of her children." Appellant's counsel claimed Alana had testified "she had split custody" even though, according to appellant's counsel, a court order reflected "she was ordered only to have supervised visitation during this time." Appellant's counsel also indicated he had a docket reflecting Alana had "paid supervised visitation" and "supervised visitation only." Appellant made other representations Alana had testified she had custody of her child.

The trial court indicated Alana never testified about her son and "custody." The court excluded the proffered evidence as irrelevant and pursuant to Evidence Code section 352, and concluded the proffered evidence was not impeachment evidence.

Appellant claims the trial court erroneously excluded the impeachment evidence that she only had a right to paid supervised visitation, and the exclusion violated various constitutional rights of appellant. Appellant argues the excluded evidence would have impeached her claim she had "share-custody [*sic*] arrangements for her toddler child at the time of the incident." We reject appellant's claim.

Appellant has failed to demonstrate Alana ever testified she had "custody" of her son, or ever testified she shared "custody" of her son, and appellant has failed to show visitation was equivalent to custody. (See *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956 [distinguishing between shared custody, sole custody, and visitation for a noncustodial parent]; Fam. Code, §§ 3006, 3007.) Appellant has thus failed to demonstrate Alana testified to the alleged fact to be impeached.

The trial court did not abuse its discretion by excluding the proffered evidence as irrelevant, and pursuant to Evidence Code section 352, nor did the trial court violate appellant's previously discussed constitutional rights. Moreover, there was strong evidence the June 28, 2002 sexual intercourse was rape, not consensual; therefore, the alleged evidentiary error was not prejudicial. (*Cf. Watson, supra,* 46 Cal.2d at p. 836.)

11

*2. The Court Did Not Erroneously Allow Llalemand to Opine at Trial that Alana Was Sexually Assaulted and Appellant Was Guilty.*

On October 18, 2012, Llalemand testified at trial during direct examination by the People as follows. On June 28, 2002, Llalemand went to a Lawndale address after "receiv[ing] a call indicating that there was an assault on a female." At the location, Llalemand went to the apartment next to apartment No. 14 and spoke with Alana.

Alana was hysterical and crying, Llalemand was unable to talk to her, and he had to wait for her to calm down. Llalemand remained there about five minutes, telling her to relax so he could speak with her. Alana eventually told Llalemand an assault had occurred in apartment No. 14. To ascertain what happened, Llalemand had Alana tell him exactly what happened "from beginning to the end." Llalemand had to determine if the person was still in apartment 14.

The following occurred: "Q. . . . You said you had to ascertain what had happened. Without going into great detail about what she said, what did you determine based on what she said? [¶] What did you determine had happened to her? [¶] A. That she was sexually assaulted. [¶] Q. Okay. And at that point – [¶] [Appellant's Counsel]: I'm going to object; it calls for a legal conclusion, motion to strike. [¶] The Court: Not for purposes of this testimony it does not call for a legal conclusion. [¶] Ladies and gentlemen, it's going to be your decision as to whether or not the . . . pending witness was sexually assaulted in relation to the crime charged, but this officer may give his opinion to cause him to do whatever he did next." (*Sic.*)

Llalemand then testified that based on what Alana told him, he decided to get other officers and go to apartment 14 to see if the person was inside. Llalemand also needed to get Alana to a hospital and made arrangements accordingly.

Appellant claims the trial court allowed Llalemand to testify Alana was sexually assaulted, and the court thereby permitted him to present "inadmissible opinion testimony" and an "ultimate legal opinion" that (1) she truthfully claimed she was sexually assaulted and (2) appellant was guilty. We reject appellant's claim.

12

In the present case, the prosecutor asked a compound question. The thrust of each component question was "what *did* you determine." (Italics added.) One component question asked what did Llalemand determine based on what Alana said. The other question asked what did Llalemand determine had happened. Llalemand's answer was, "That she was sexually assaulted." Thus, the challenged testimony was Llalemand's answer that he *determined at the scene* that Alana was sexually assaulted. In other words, Llalemand testified about a *prior* conclusion he had reached at the scene, i.e., Alana had been sexually assaulted. He did not opine *at trial* (either as an expert or lay person) Alana was sexually assaulted. A fortiori, he did not, at trial, present inadmissible opinion testimony or an ultimate legal opinion that Alana truthfully claimed she was sexually assaulted or that appellant was guilty.

The term "assault" has multiple meanings. It can be used in a lay sense, i.e., one definition of "assault" is simply "a violent physical or verbal attack."[6] To this extent, a conclusion someone was sexually assaulted is simply a conclusion someone was sexually attacked. However, the term "assault" can also be used in a legal sense, i.e., "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.) To this extent, a conclusion someone was sexually *assaulted* is a legal conclusion.

Llalemand's testimony before and after the challenged testimony demonstrates the challenged testimony was part of his recitation of historical *facts* that occurred at the scene. In sum, the trial court reasonably could have concluded Llalemand's testimony he determined Alana was sexually assaulted was a recitation of a historical *fact* and he was using the term "assaulted" in its lay sense, not its legal sense.

---

[6]     (Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 69.)

13

We review under an abuse of discretion standard a trial court's ruling on the admissibility of opinion testimony. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1306; *People v. Mixon* (1982) 129 Cal.App.3d 118, 127.) The trial court did not abuse its discretion by ruling the prosecutor's previously discussed question did not call for a legal conclusion. Nor did Llalemand present inadmissible opinion testimony that Alana truthfully claimed she was sexually assaulted or that appellant was guilty.

3. *No Prejudicial Prosecutorial Misconduct Occurred.*

    a. *Prosecutorial Questions Regarding Appellant's Prior Homosexual Conduct.*

During direct examination by appellant, Judith Simpson (Judith), appellant's wife, testified as follows. Appellant was a good husband and their sex life was normal and sometimes gentle. In the bedroom, Judith never had a problem with appellant wanting or forcing her to do something she did not want to do, and he had never been overly aggressive with her. Appellant had never been violent towards Judith.

During cross-examination, Judith testified she met appellant in 2007. She also testified he told her nothing about his childhood while she was dating him. The following then occurred: "Q. By [The Prosecutor]: . . . you weren't aware of him being involved in any homosexual activities as a teenager? [¶] A. No. [¶] [Appellant's Counsel]: Objection. Irrelevant." At sidebar, appellant objected his prior sexual orientation was irrelevant and excludable under Evidence Code section 352. Appellant indicated the prosecutor was attempting to introduce evidence of appellant's juvenile adjudication for murder.[7]

---

[7]     Earlier, after the People rested but before the presentation of defense evidence, the court and parties discussed the possibility the People might seek to introduce evidence appellant was a victim of a child pornography business and appellant, as a juvenile, ultimately murdered the business's operator.

The court overruled the objection, observing, inter alia, "You [appellant's counsel] did bring up the issue of the normalcy of the sexual relationship." The court indicated the parties' counsel were required to explain to jurors that questions did not imply answers. The court, in Torrance, rejected appellant's argument the jury there was conservative; the court instead concluded Torrance jurors were incredibly tolerant and intelligent, and they followed a court's instructions. The court allowed the prosecutor to restate her question and the prosecutor asked Judith, "Did your husband ever tell you about any homosexual relationships or activities he had when he was a teenager?" Judith replied no.[8]

Appellant claims the prosecutor committed misconduct by asking Judith, "you weren't aware of him being involved in any homosexual activities as a teenager?" and "Did your husband ever tell you about any homosexual relationships or activities he had when he was a teenager?" There is no need to decide appellant's claim.

Judith answered no to each of the above questions. The jury heard no testimony from Judith as to any alleged homosexual relationships or activities by appellant as a teenager. The court, using CALCRIM No. 222 and 351, gave appropriate limiting instructions concerning the prosecutor's questions, and those instructions informed the jury that questions were not evidence. The jury is presumed to have followed the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 (*Sanchez*).)

---

[8] During its final charge to the jury, the court, using CALCRIM No. 222, instructed the jury that nothing attorneys said, and none of their questions, were evidence, the attorneys' questions were significant only if they helped the jury understand witnesses' answers, and the jury was not to assume something was true simply because an attorney's question suggested it was true. The court, using CALCRIM No. 351, told the jury, "The attorney for the People was allowed to ask a defendant's witness if she had heard that the defendant had engaged in certain conduct. These 'have you heard' questions and their answers are not evidence that the defendant engaged in any such conduct. You may consider these questions and answers only to evaluate the meaning and importance of a character witness's testimony."

15

Finally, the central issue in this case was whether the sexual intercourse between appellant and Alana was consensual or rape, and there was strong evidence of rape. No prejudicial prosecutorial misconduct occurred when the prosecutor posed the above two questions. (*Cf. People v. Barnett* (1998) 17 Cal.4th 1044, 1133 (*Barnett*).)

b. *Prosecutorial Question Regarding Appellant's Prostitution Activity.*

Immediately after Judith answered the last of the prosecutor's two above-mentioned questions regarding appellant's alleged teenage homosexual relationships or activities, the following occurred: "Did [appellant] ever tell you about any sexual acts that he performed for money or for drugs? [¶] A No. [¶] [Appellant's Counsel]: Objection. . . . [¶] The Court: Sustained. . . . Answer is stricken, . question is stricken."

Appellant claims the prosecutor committed misconduct by asking appellant the above quoted question concerning whether he engaged in prostitution. There is no need to decide appellant's claim. Judith answered no to the above question. The jury heard no testimony from Judith as to any alleged prostitution activity by appellant. The jury heard the court sustain appellant's objection and strike the question and answer. This cured any harm. (*Cf. People v. Morris* (1991) 53 Cal.3d 152, 193-194; *People v. Prysock* (1982) 127 Cal.App.3d 972, 998.) The court, using CALCRIM No. 222 and 351, gave appropriate limiting instructions concerning the prosecutor's question, and those instructions informed the jury that questions were not evidence. The jury is presumed to have followed the court's instructions. There was strong evidence of appellant's guilt. No prejudicial prosecutorial misconduct occurred.

c. *Prosecutorial Questions Regarding Judith's Love for Appellant.*

During the prosecutor's cross-examination of Judith, the following occurred without objection: "Q. And you love your husband? [¶] A. I love him. [¶] Q. And would you like to be reunited with your husband? [¶] A. Of course."

16

Appellant claims the above two questions were prosecutorial misconduct because they "clearly implied appellant's current in-custody status." However, appellant failed to object on the ground of prosecutorial misconduct and failed to request a jury admonition with respect to the prosecutor's questions, which would have cured any harm. Appellant waived the issue of prosecutorial misconduct. (*Cf. People v. Gionis* (1995) 9 Cal.4th 1196, 1215; *People v. Mincey* (1992) 2 Cal.4th 408, 471.)

Moreover, no jury reasonably would have understood the prosecutor's question concerning whether Judith loved her husband, and/or her answer that she did, as implying appellant was in custody. The question and answer about whether she would like to be reunited with appellant did not explicitly refer to custody, and she could have been reunited with appellant after the trial proceedings, whether or not she was reunited with him after any custody status ended. The questions and answers were indisputably relevant to the issue of Judith's bias. No prosecutorial misconduct occurred. (See *People v. Hill* (1998) 17 Cal.4th 800, 819.)[9] Moreover, in light of the strong evidence of appellant's guilt, no prejudicial prosecutorial misconduct occurred.

---

[9] In light of our discussion of appellant's various claims, we reject appellant's claim cumulative prejudicial error occurred.

17

### *DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

          KITCHING, Acting P. J.

We concur:

    ALDRICH, J.

    LAVIN, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.