Filed 12/30/14  P. v. Pacheco CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B253136 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA405511) |
| v. | |
| LOUIE CECIL PACHECO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Anne Harwood Egerton, Judge.  Affirmed.

Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information filed by the Los Angeles County District Attorney, defendant and appellant Louie Cecil Pacheco (Pacheco) was charged with first degree murder (Pen. Code § 187, subd. (a), count one)[1] and two counts of assault with a firearm (§ 245, subd. (a)(2)). It was further alleged as to count one that Pacheco personally and intentionally discharged a firearm (§ 12022.53, subd. (d)). Finally, as to all counts, it was alleged that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)). Pacheco pleaded not guilty and denied the special allegations.

Trial was by jury. Pacheco was found guilty of murder and two counts of assault with a firearm. The jury made a true finding on the firearm allegation, but could not reach a verdict on the gang allegations. He was sentenced to 50 years to life plus five years in state prison. Various fines were imposed.

Pacheco's timely appeal ensued. On appeal, he argues that the trial court erred when it allowed a police officer to testify to his lay opinion that Pacheco was the gunman depicted in a surveillance video of the apartment complex where the shooting occurred.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

I. *Prosecution Evidence*

A. <u>The Shooting</u>

On or about November 26, 2012, at approximately 6:15 a.m., Denise Flores (Flores) was sitting on the back stairs of an apartment complex in Cypress Park. She saw a man walking through the alley. When the man asked Flores how to get into the building, she told him to go to the front door. The man left, but returned about two minutes later. He said that the front door was locked. Flores offered to open the back door, and the man accepted. She climbed through a window and opened the door. The man thanked Flores, gave her a cigarette and some methamphetamine, and then walked down the hallway.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

At approximately 7:30 a.m., Jose Benitez (Benitez) left his apartment and went to the bathroom. Someone repeatedly knocked on the bathroom door. Benitez replied that he would be out soon. When Benitez left the bathroom, a man was standing outside the door. The man stated, "'Hey, what's going on Pisano?'" Benitez walked downstairs to leave the building for work. He heard a loud thump. He glanced down the hallway, but did not see anything.

At around 7:40 a.m., Henry Kaiwi (Kaiwi) stopped by Dalia Castillo's (Castillo) apartment. Kaiwi asked Castillo if she wanted to smoke marijuana. She responded yes. Kaiwi said that he was going down the hall and would be right back. Within a minute, Kaiwi was running back to Castillo's apartment. Kaiwi looked scared.

Kaiwi then said that he had seen "Diablo" and that "Diablo was following him." Castillo did not know Diablo. She was scared for Kaiwi and told him to go into her apartment. Kaiwi hid in Castillo's closet. Castillo remained in the hallway, sorting her clothes, trying to draw attention away from Kaiwi.

A man walked into Castillo's apartment. He said to Kaiwi, "'Hey, you little bitch, you think you can hide from me?'" Kaiwi was pleading and crying. The man told Kaiwi to open his mouth. Kaiwi repeatedly asked the man not to kill him. Then Castillo heard a gunshot.

At that time, Jose Calles (Calles), Castillo's neighbor, was standing next to Castillo. The man walked out of Castillo's apartment, pointed a gun at Castillo and Calles, and told them, "'You didn't see nothing, bitch.'" The man walked quickly down the hallway.

Jesse Wagner (Wagner) was in his apartment that morning when he heard two men yelling. One man yelled, "'Did you steal from me?'" The other man replied that he did not. Wagner heard a gunshot and then, less than a minute later, someone say repeatedly, "'You didn't see anything. . . .'" Wagner called 911.

Meanwhile, as Benitez walked to the bus stop, he heard someone walking behind him. It was the man who had spoken to Benitez outside of the bathroom. He looked at

3

Benitez but kept walking.  The man appeared to be hiding his face.  He was also wearing more clothing than he had been a few minutes earlier.

Back at the apartment complex, Castillo looked into her apartment and saw Kaiwi lying on the floor, choking on his own blood.  Estevan Ruiz (Ruiz) left his apartment and saw Castillo, who appeared to be in shock.  Ruiz looked into Castillo's apartment and saw Kaiwi and a lot of blood.  He asked his wife to call 911.  Ruiz and his wife tried to follow the 911 dispatcher's instructions to provide aid to Kaiwi.  Police and paramedics arrived and attempted to help Kaiwi.  Kaiwi died of a gunshot wound to the head, with the entry wound inside his mouth.

B. Castillo's Identification of the Shooter

At the police station, Castillo gave officers a description of the shooter.  Officers then showed Castillo a six-pack photographic line-up.  She identified someone other than Pacheco based upon the eyes.  She mistakenly identified the wrong person because she could only think of Kaiwi's eyes at the time the identification was made.

When shown a surveillance video of the apartment complex and of the events that occurred that morning, Castillo identified Pacheco as Kaiwi's killer.  Castillo identified Pacheco in court as the killer.[2]

Officers also showed Calles a six-pack photographic line-up.  Calles identified someone other than Pacheco.  At trial, he could not identify the shooter.

C. Apartment Complex Video Surveillance System and Police Officer Testimony

The apartment building has a video surveillance system.  A video was played for the jury.  The video showed Flores talking to a man and opening the back door for him; a man knocking on the bathroom door; Benitez leaving the bathroom; Kaiwi running to Castillo's apartment; and the gunman walking out of Castillo's apartment.

Los Angeles Police Department (LAPD) Officer Arthur Castro, who knew Pacheco from previous contacts, viewed the surveillance video and observed a man

---

[2]    Castillo was a reluctant witness.  She did not want to go to court and be known as a snitch.

4

standing outside the bathroom, changing his shirt, and walking around the hallway. Officer Castro identified Pacheco as the man in the video based upon his gait, his facial features, and his tattoos.

D. Arrest of Pacheco

On December 5, 2012, LAPD Officer Eric Hurd saw Pacheco walking with another person in Cypress Park. When Officer Hurd and his partner approached Pacheco, both he and the other person ran. The officers apprehended Pacheco.

That same day, LAPD Detective Brian Martin interviewed Pacheco. Pacheco acknowledged that he heard about the shooting. He said that he knew Kaiwi had "sticky fingers." Pacheco acknowledged that the person in the surveillance video "could be" him.

E. Pacheco is Known as Diablo

On January 24, 2013, Pacheco telephoned his mother from jail. He instructed his mother to call "Diane" and tell her that "Diablo from Cypress Park" or "Louie" was trying to reach her. Various police officers knew Pacheco by the gang moniker, "Diablo."

II. *Defense Evidence*

Pacheco did not testify.

## DISCUSSION

Pacheco argues that the trial court committed reversible error when it allowed Officer Castro to offer his lay opinion that Pacheco was the gunman in the surveillance video of the apartment complex where the shooting occurred.

I. *Relevant proceedings*

Prior to the start of trial, the trial court addressed the prosecution's plan to present a police officer's lay opinion testimony identifying Pacheco as the person who appeared in the surveillance video at the crime scene. Noting Pacheco's objection, the trial court tentatively ruled that Officer Castro's lay opinion was admissible. In so ruling, the trial court reasoned that his opinion would be helpful in two ways: (1) Pacheco was likely to argue that Castillo's identification of Pacheco was not credible in light of her

5

identification of another person from a photographic line-up, and her admission that she had been using methamphetamine all night prior to the shooting. (2) It was difficult to view the face of the person in the video because the person is wearing a hat. But, the person in the video had a distinctive walk. Officer Castro, who was familiar with Pacheco's gait, appearance, and tattoos, would provide useful testimony.

Pacheco's counsel argued that Officer Castro's lay opinion should be excluded. His last contact with Pacheco was two years prior to the videotape. In addition, Castillo identified Pacheco in court.

The prosecution responded that the video did not provide a clear depiction of the suspect, so Officer Castro's lay opinion was useful. In addition, Castillo did not provide an adequate identification.

After entertaining oral argument, the trial court ruled that Officer Castro's testimony was admissible.

## II. *Relevant law*

Evidence Code section 800 provides: "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his testimony." Admission of lay opinion is within the sound discretion of the trial court and will not be disturbed on appeal unless a clear abuse of discretion is shown. (*People v. Mixon* (1982) 129 Cal.App.3d 118, 127.)

## III. *Analysis*

We conclude that Officer Castro's testimony falls within the purview of testimony allowed by Evidence Code section 800. First, his lay opinion was based on his own perceptions and on his familiarity with Pacheco. While Officer Castro had not seen Pacheco in two years, he was familiar with Pacheco's gait, distinctive tattoos, and facial features. Any question of Officer Castro's knowledge goes to the weight, not the admissibility, of the opinion evidence. (*People v. Larkins* (2011) 199 Cal.App.4th 1059, 1067.)

6

Second, Officer Castro's opinion was helpful to the jury's understanding of who the man was on the surveillance tape. (*People v. Perry* (1976) 60 Cal.App.3d 608, 611–612, 614–615.) Although Castillo identified Pacheco at trial, her credibility was questionable at best. She failed to identify him prior to trial. And, she admitted to smoking methamphetamine the entire night prior to the shooting. Since a credible identification of the suspect had not been provided, Officer Castro's lay opinion was helpful to the jury.

Even if the trial court had erred by allowing the opinion testimony, any error was harmless because it is not reasonably probable that the jury would have reached a more favorable result had that alleged error not occurred. (*People v. Bradley* (2012) 208 Cal.App.4th 64, 84.) We first note that the jury was admonished how to consider lay opinions during trial.[3] The jury is presumed to have followed the trial court's instructions. (*People v. Delgado* (1993) 5 Cal.4th 312, 331.)

And, there was overwhelming evidence of Pacheco's guilt. Castillo testified that Kaiwi told her that a man named "Diablo" was after him; the man followed Kaiwi into Castillo's apartment and shot and killed him. At trial, Castillo identified Pacheco as the shooter. While in jail, Pacheco identified himself to his mother as "Diablo," and police officers knew Pacheco by his gang moniker, "Diablo." Moreover, while being interviewed by police, Pacheco acknowledged that the man in the surveillance video had a tattoo that was identical to his own and that he could be the man depicted in the video. It follows that even if there had been error, such error was harmless. (*People v. Jablonski* (2006) 37 Cal.4th 774, 823.)

---

[3] The jury was instructed: "Witnesses, who were not testifying as experts, gave their opinions during the trial. You may but are not required to accept those opinions as true or correct. You may give the opinions whatever weight you think appropriate. Consider the extent of the witness's opportunity to perceive the matters on which his or her opinion is based, the reasons the witness gave for any opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
         ASHMANN-GERST


We concur:


_____, J.
     CHAVEZ


_____, J.
     HOFFSTADT


8