Filed 11/18/25 P. v. Ortiz CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B337320 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA114200) |
| v. | |
| JASON ORTIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael Villalobos, Judge. Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Jason Ortiz appeals from his judgment of conviction of one count of petty theft (Pen. Code,[1] § 484, subd. (a)). On appeal, Ortiz argues: (1) the trial court erred in allowing two police officers to identify Ortiz as the perpetrator in surveillance video of the theft; (2) the trial court erred in excluding evidence of misconduct by the investigating officer in a prior unrelated case; and (3) there was cumulative error. We conclude the trial court did not err in admitting the officers' identification testimony because it reasonably could find that such testimony was based on the officers' personal knowledge and helpful to the jury. We also conclude the trial court did not err in excluding the proffered impeachment evidence because it reasonably could find that the probative value of such evidence was substantially outweighed by the possible prejudicial effects. Because Ortiz has failed to show error in the trial court's rulings, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Evidence at trial

On February 19, 2023, Jia Li parked her car on the street in front of her business in Alhambra, California. She did not lock her car because she believed the auto-lock feature was on. Li left her limited-edition Gucci purse on the front passenger seat of her car and headed into her business. Inside her purse, Li had a Burberry wallet and $9,000 in cash in $100 denominations.

When Li returned to her car about 10 minutes later, her purse was missing. Li then reviewed her business's surveillance video footage. The surveillance video showed a blue Chevy truck

---

[1]     Unless otherwise stated, all further undesignated statutory references are to the Penal Code.

parked near Li's car. It also showed a man get into Li's car and take her purse. Li promptly reported the theft to the police. The surveillance video was played for the jury at trial.

The Alhambra Police Department sergeant David Munson was the lead investigator on the case. He reviewed the surveillance video footage provided by Li and saw that the license plate on the blue Chevy truck was visible. Ortiz was not the registered owner of the Chevy truck. However, approximately five months earlier, on September 4, 2022, Ortiz was inside that vehicle when another officer made contact with him. On that occasion, a police corporal Michael Hennes responded to a call regarding a suspicious person and saw the Chevy truck parked outside a residence. When Corporal Hennes approached, Ortiz exited from the driver's seat of the vehicle. Corporal Hennes spoke with Ortiz for 10 to 15 minutes, and observed that Ortiz was about five feet nine inches tall, weighed between 170 and 190 pounds, and was unshaven. Corporal Hennes's interaction with Ortiz was recorded on the officer's body-worn camera, which was played for the jury. Ortiz was not arrested in connection with that incident.

In investigating the theft of Li's purse, Sergeant Munson compared the man in the surveillance video with Ortiz's driver's license photo and believed that Ortiz looked like the perpetrator. On March 8, 2023, Sergeant Munson and his team conducted surveillance of the residential address where the Chevy truck was registered. The truck was parked in the driveway. That same day, Ortiz, a woman, and a young child left the residence and drove away in the truck. The officers followed the truck to an elementary school, where the child exited. The officers then stopped the truck and arrested Ortiz, who was in the rear

3

passenger seat.  During a search of Ortiz, Sergeant Munson recovered $6,000 in $100 denominations from his person.  The arrest and search of Ortiz was recorded on Sergeant Munson's body-worn camera, which also was played for the jury.

At trial, Corporal Hennes was shown the surveillance video of the theft.  He testified that he recognized the blue Chevy truck in the video as the same one that Ortiz exited during their September 2022 contact.  He also testified that he recognized the man in the video as Ortiz.  Corporal Hennes based his opinion on Ortiz's physical features, including his height, weight, goatee, eyebrows, and hairline.  In particular, Corporal Hennes testified that, like Ortiz, the man in the video had eyebrows that were "very peaked at the temple," and a hairline that was "very squared."  In forming his opinion, Corporal Hennes also considered that on both occasions, Ortiz was driving the same vehicle, which had the same object hanging from the rear view mirror.

Sergeant Munson testified that the man in the surveillance video was Hispanic and had a goatee, "bushy eyebrows," and a "pretty unique hairline in the front" with a "little point on the middle of forehead where his hairline goes down."  Sergeant Munson further testified that the man in the video and Ortiz shared similar features, including the hairline, eyebrows, goatee, height, and build.

## 2. **Jury verdict and sentencing**

The jury found Ortiz not guilty of grand theft (§ 487, subd. (a)), but guilty of misdemeanor petty theft (§ 484, subd. (a)).  In a bifurcated proceeding, Ortiz admitted he had served a prior prison term (§ 1170, subd. (h)).  The trial court sentenced Ortiz to

180 days in county jail, and ordered him to pay $6,000 in restitution to Li (§ 1202.4, subd. (f)).

Ortiz filed a timely appeal.

## DISCUSSION

### 1. Admission of lay opinion testimony

Ortiz argues the trial court abused its discretion in allowing Corporal Hennes and Sergeant Munson to provide lay opinion testimony that Ortiz was the person in the surveillance video footage of the theft. Ortiz also asserts the admission of the testimony deprived him of his constitutional right to due process and a fair trial. We conclude the trial court did not abuse its discretion or violate due process in admitting the testimony.

#### 1.1 Relevant background

Prior to trial, Ortiz moved to exclude any lay opinion testimony of police officers as to the identity of the individual seen in the surveillance video of the theft. Ortiz contended the officers' opinion would not aid the jury because the surveillance video showed an unobstructed view of the suspect, and Ortiz's appearance had not changed since the crime occurred.

At a pretrial hearing on the matter, the prosecutor stated that she intended to ask the officers to opine as to whether Ortiz was the individual in the surveillance video based on his physical features. The prosecutor also explained that one of the officers, Corporal Hennes, interacted with Ortiz five months before the theft, and that he would base his opinion on his familiarity with Ortiz from that earlier incident.

The trial court ruled that the proffered opinion testimony of the officers was admissible.

#### 1.2 Governing law

A lay witness may offer opinion testimony if it is rationally based on the perception of the witness and is helpful to a clear

5

understanding of his or her testimony. (Evid. Code, § 800.) As our Supreme Court has observed, " '[t]he identity of a person is a proper subject of nonexpert opinion.' " (*People v. Leon* (2015) 61 Cal.4th 569, 601 (*Leon*).) We review the admission of lay witness identification testimony for abuse of discretion. (*Id.* at p. 600.) Under this standard, the trial court's ruling " ' "will not be disturbed unless there is a showing that [it] acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice." ' " (*People v. Young* (2019) 7 Cal.5th 905, 931.)

California courts have long upheld the admission of lay witness testimony identifying the defendant as the person seen in a surveillance video or photograph. (*Leon, supra,* 61 Cal.4th at p. 601; *People v. Mixon* (1982) 129 Cal.App.3d 118, 131 (*Mixon*); *People v. Perry* (1976) 60 Cal.App.3d 608, 613 (*Perry*).) In *Perry,* for instance, the court held that a police officer's identification of the defendant as one of the robbers in a surveillance film of the crime was admissible as lay opinion testimony because the officer was acquainted with defendant's physical appearance from their numerous contacts over the previous five years. (*Perry,* at pp. 610, 613.) Similarly, in *Mixon,* the court held that two police officers could provide lay opinion testimony that the defendant was the person depicted in surveillance photos taken during the commission of a robbery because the officers had a number of prior contacts with the defendant and were familiar with his physical features. (*Mixon,* at pp. 131–132.) In both cases, the identifications were based on the officers' personal knowledge of the defendants from contacts that preceded the charged crime, which could aid the jury because the defendant had altered his appearance before trial. (*Perry,* at p. 613; *Mixon,* at p. 131.)

In *Leon*, the California Supreme Court extended the reasoning in *Perry* and *Mixon* to hold that a police officer could offer a lay opinion identifying the defendant as the person seen in surveillance footage of two robberies based on contacts that took place after the crimes were committed. (*Leon*, *supra*, 61 Cal.4th at pp. 600–601.) The officer in *Leon* first saw the defendant when he was arrested for the charged crimes, and thereafter spent about two hours with him over several occasions. (*Id*. at p. 600.) In rejecting the argument that the officer's identification was precluded by his lack of contact with the defendant prior to the charged crimes, the Supreme Court reasoned that "[t]his is a distinction without a difference" because the officer "was familiar with defendant's appearance around the time of the crimes," and "[q]uestions about the extent of [his] familiarity . . . went to the weight, not the admissibility, of his testimony." (*Id*. at p. 601.) The court further noted that the officer's identification could aid the jury because "[o]ther eyewitness testimony indicated that defendant had changed his appearance after the crimes." (*Ibid*.) In addition, because the surveillance video was played for the jury at trial, the "jurors could make up their own minds about whether the person shown was defendant." (*Ibid*.)

### 1.3 The trial court did not err in admitting the challenged lay opinion testimony

In this case, the trial court acted within its discretion in admitting the officers' lay opinion testimony identifying Ortiz as the individual seen in the surveillance video of the theft. Both Corporal Hennes and Sergeant Munson based their identification on their personal knowledge of Ortiz and familiarity with his appearance around the time of the February 2023 crime. The officers' testimony was relevant because it aided the jury in

7

determining whether Ortiz was the person in the surveillance video, and the admission of the testimony did not create a substantial risk of undue prejudice.

Corporal Hennes was familiar with Ortiz and his vehicle from their September 2022 contact, which occurred five months before the theft. Based on that interaction, Corporal Hennes opined that Ortiz was the person seen taking the purse in the surveillance video because both Ortiz and the perpetrator had similar distinctive characteristics, including eyebrows that were "very peaked at the temple" and a hairline that was "very squared." Corporal Hennes also recognized the Chevy truck in the surveillance video from his prior contact with Ortiz because both vehicles had the same license plate number and the same object hanging from the rear view mirror.

Sergeant Munson became familiar with Ortiz during his investigation of the theft. He first identified Ortiz as a potential suspect based on Ortiz's connection to the Chevy truck that appeared in the surveillance video. Then, after comparing the person seen taking the purse in the surveillance video with Ortiz's driver's license photo, Sergeant Munson determined that Ortiz looked like the perpetrator. Sergeant Munson also made in-person contact with Ortiz at the time of his March 2023 arrest. Sergeant Munson searched Ortiz before he was placed inside the patrol car, and again at the police station. Based on his familiarity with Ortiz, Sergeant Munson opined that Ortiz shared certain physical features with the man in the surveillance video, including a goatee, "bushy eyebrows," and a "pretty unique hairline" that extended to the middle of his forehead.

In challenging the admission of the officers' identification testimony, Ortiz contends their opinions were not helpful to the

jury because Ortiz's appearance did not materially change from the time of the theft until trial. However, none of the cases discussed above held that a lay opinion identification is only admissible where the defendant altered his or her appearance after the crime. Rather, the admissibility of the identification depends on whether it is based on the witness's "relevant personal knowledge and aided the jury." (*Leon*, *supra*, 61 Cal.4th at p. 601; see also *Mixon*, *supra*, 129 Cal.App.3d at pp. 131–132; *Perry*, *supra*, 60 Cal.App.3d at pp. 614–615.) Here, the lay opinions of Corporal Hennes and Sergeant Munson aided the jury because the officers described distinct physical features that Ortiz shared with the individual seen in the surveillance video. This helped draw the jurors' attention to certain details in the video that may not have been readily apparent, which could assist them in determining the identity of the perpetrator. As in *Leon*, the video itself was played for the jurors so that they "could make up their own minds about whether the person shown was [the] defendant." (*Leon*, at p. 601.) Under these circumstances, any questions about the extent of each officer's familiarity with Ortiz, including the timing and nature of their prior contacts with him, "went to the weight, not the admissibility, of [their] testimony." (*Ibid.*)

Ortiz also argues the officers' identification testimony was inadmissible under Evidence Code section 1523 because neither Corporal Hennes nor Sergeant Munson personally witnessed the events shown in the surveillance video. That statute provides that "oral testimony is not admissible to prove the content of a writing." (*Id.*, subd. (a).) The "writing" in this case was the surveillance video of the theft. (Evid. Code, § 250.) However, the video itself was admitted into evidence, and the officers'

identification testimony was not offered to prove the content of the video, but rather to aid the jury in evaluating whether the person in the video was Ortiz.  (See *People v. Son* (2020) 56 Cal.App.5th 689, 696 [Evidence Code section 1523 did not preclude officer's testimony describing events in surveillance video because it was not offered "to 'prove the content' of the video, but instead to highlight important details in the video"].)  The admission of the officers' testimony therefore did not violate Evidence Code section 1523.

Ortiz further asserts the officers' testimony should have been excluded under section 352 because the prejudicial effect of the evidence substantially outweighed any probative value.  We disagree.  Evidence is unduly prejudicial when it " 'uniquely tends to evoke an emotional bias against the defendant as an individual,' " while having only slight probative value with regard to the issues.  (*People v. Miles* (2020) 9 Cal.5th 513, 587.)  Here, the officers' testimony describing their prior contacts with Ortiz was not uniquely likely to evoke an emotional bias against him.  Corporal Hennes testified that his only contact with Ortiz was in response to a suspicious person report and did not result in an arrest.  Sergeant Munson testified that he made contact with Ortiz during the arrest in this case, which took place without incident after the police initiated a traffic stop.  The jury was shown the body-worn camera footage of each officer's contact with Ortiz, along with the surveillance video of the theft.  The jury also was instructed with CALCRIM No. 333 that it was "not required to accept" the opinions of a lay witness "as true or correct," and that it could "give the opinions whatever weight you think appropriate."  We presume the jury understood and

10

followed this instruction in evaluating the officers' testimony. (*People v. Scott* (2015) 61 Cal.4th 363, 399.)

We likewise reject Ortiz's claim that the admission of the officers' identification testimony violated his constitutional right to due process and a fair trial. The " '[a]pplication of the ordinary rules of evidence generally does not impermissibly infringe on a [defendant's] constitutional rights.' " (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.) " 'The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.' " (*People v. Jones* (2013) 57 Cal.4th 899, 949.) In this case, the trial court reasonably determined that the proffered opinion testimony was relevant to the charged crime and was not unduly prejudicial. Ortiz accordingly has failed to show an abuse of discretion or violation of due process in the admission of such evidence.

**2. Exclusion of impeachment evidence**

Ortiz contends the trial court erred in excluding evidence of misconduct committed by Sergeant Munson in a prior unrelated case. Ortiz also claims the exclusion of the evidence violated his Sixth Amendment right of confrontation. We conclude the trial court did not err in excluding the proffered evidence.

**2.1 Relevant background**

During trial, Ortiz sought to introduce evidence of a 2012 incident of alleged misconduct involving Sergeant Munson. In objecting to the introduction of such evidence, the prosecutor described the incident as follows: "[Sergeant Munson] was in a DUI investigation and he stated on the police report that he saw the defendant driving the vehicle when, in fact, he didn't personally s[ee] the driving of the defendant. What happened was there was another officer who was there before he got there,

11

and the other officer saw the driving and informed Sergeant Munson that the defendant drove. [¶] Instead of writing that accurately, Sergeant Munson in the police report indicated that he personally saw the driving. Later on at the DMV hearing, he stated that that's a mistake and what had really happened is another officer observed the driving." The case against the driver was dismissed.

Following an investigation, the district attorney's office declined to file criminal charges against Sergeant Munson. According to the prosecutor, the investigation revealed that Sergeant Munson's report "accurately portrayed the [e]ffects of the crime" as set forth in the other officer's supplemental report. It also showed that Sergeant Munson "did not alter the facts of the [officer's] observation" or attempt to "embellish his report in order to strengthen a criminal case against that defendant."

The prosecutor asked the trial court to exclude the evidence of Sergeant Munson's alleged misconduct under Evidence Code section 352. Defense counsel argued the evidence was admissible for impeachment purposes because Sergeant Munson "did submit a police report under penalty of perjury that was false," and "credibility is always an issue."

The trial court excluded the evidence, stating in relevant part: "I'm not even sure I can make a finding that there was a misconduct here because it's not clear just based on the facts as stated whether it was . . . intentional. Now, there's an inference that it was intentional because . . . he said that the watch commander may have advised him to write that he was the one who . . . observed the driving. So there's an inference there, but I think it would need further clarification as to whether that was, in fact, what happened and whether the supervisor . . . would

12

verify that. [¶] . . . [¶] . . . And so without that, I'm not even sure I can find misconduct. But even assuming there is misconduct here as to this particular incident involving driving [under] the influence, I don't find it relevant to this proceeding and to the officer[']s credibility. The officer is not testifying as to the substantive theft. All he's testifying to is to his investigation and possible identification of the perpetrator from the video."

### 2.2 Governing law

In determining the credibility of a witness, the trier of fact "may consider . . . any matter that has any tendency in reason to prove or disprove the truthfulness of his [or her] testimony," including the witness's "character for honesty or veracity or their opposites." (Evid. Code, § 780, subd. (e).) In general, "[a] witness may be impeached with evidence of a prior conviction or other conduct involving dishonesty or otherwise demonstrating moral turpitude, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Wilson* (2024) 16 Cal.5th 874, 912.) Evidence Code section 352 "permits courts to limit such evidence if its probative value is substantially outweighed by the probability that it will consume undue time or create a substantial danger of undue prejudice, confusing the issues, or misleading the jury." (*People v. Wilson*, at p. 912.)

As our Supreme Court has explained, "[w]hen determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, [and] whether it is near or remote in time . . . . [Citations.] Additional considerations apply when the proffered impeachment evidence is misconduct other than a prior conviction. This is because such misconduct generally is less probative of immoral character or dishonesty

13

and may involve problems involving proof, unfair surprise, and the evaluation of moral turpitude." (*People v. Clark* (2011) 52 Cal.4th 856, 931–932.) Accordingly, " 'courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.' " (*Id*. at p. 932.)

"A trial court's decision to admit or exclude impeachment evidence under Evidence Code section 352 is reviewed for an abuse of discretion." (*People v. Johnson* (2015) 61 Cal.4th 734, 766.) Because the court's discretion in ruling on the admissibility of such evidence " 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*People v. Clark*, *supra*, 52 Cal.4th at p. 932.)

### 2.3 The trial court did not err in excluding the proffered impeachment evidence

In this case, the trial court did not abuse its discretion in excluding the evidence of Sergeant Munson's alleged misconduct in an unrelated drunk driving case. The court reasonably could find that the proffered evidence had minimal probative value given that the conduct was 12 years old, no criminal charges were filed, and Sergeant Munson admitted the error when he testified at the hearing in the prior case. As the trial court also observed, Sergeant Munson was not called as a witness to the "substantive theft" at issue in this case. Rather, he was called to testify about the course of his investigation of the theft and to offer an opinion on the identity of the person in the surveillance video based on his contact with Ortiz during Ortiz's arrest. That contact was recorded on Sergeant Munson's body-worn camera and shown to the jury, and there was no allegation of misconduct in connection

14

with Ortiz's search or arrest.  The trial court also reasonably could find that attempting to impeach Sergeant Munson on a collateral credibility issue likely would involve problems of proof and an undue consumption of time, which outweighed the low probative value of such evidence.  (See *People v. Contreras* (2013) 58 Cal.4th 123, 152 ["[a] fact may bear on the credibility of a witness and still be collateral to the case"].)

We further conclude that exclusion of the evidence did not violate Ortiz's constitutional right of confrontation.  "Although the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility, 'trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination' " on the grounds set forth in Evidence Code section 352.  (*People v. Quartermain* (1997) 16 Cal.4th 600, 623; accord, *People v. Mendoza* (2011) 52 Cal.4th 1056, 1089– 1090.)  " ' "[U]nless the defendant can show that the prohibited cross-examination would have produced 'a significantly different impression of [the witness's] credibility' [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment." ' "  (*People v. Pearson* (2013) 56 Cal.4th 393, 455– 456.)  Here, Ortiz cannot show that allowing the defense to cross- examine Sergeant Munson about this collateral issue would have produced a significantly different impression of the officer's credibility given that it involved an allegation of misconduct that was remote in time, and Sergeant Munson's credibility was not central to his testimony as the jurors could themselves view the surveillance video and the body-worn camera video.  On this record, we find no abuse of discretion in excluding the proffered impeachment evidence.

### 3. Cumulative error

Ortiz asserts the cumulative effect of the claimed errors deprived him of due process of law and a fair trial. "Cumulative error is present when the combined effect of the trial court's errors is prejudicial or harmful to the defendant. [Citations.] Although a defendant is entitled to a fair trial, he or she is not entitled to 'a perfect one.'" (*People v. Capers* (2019) 7 Cal.5th 989, 1017.) Here, Ortiz received a fair trial and has failed to show any cumulative error requiring reversal of his conviction.

### DISPOSITION

The judgment is affirmed.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.


16